DALE L. ALLEN, JR., State Bar No. 145279
dallen@aghwlaw.com
KEVIN P. ALLEN, State Bar No. 252290
kallen@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone:    (415) 697-2000
Facsimile:    (415) 813-2045

Attorneys for Defendant
JOHN GALE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO COURTHOUSE

| | |
|---|---|
| PAUL J. HALL AND JENNETTE HALL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF WEED, JOHN GALE, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-01789-TLN-DMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES [F.R.C.P. 56]**<br><br>HON. TROY L. NUNLEY<br><br>Date:  January 11, 2024<br>Time: 2:00pm<br>Ctrm: 2, 15th floor |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on January 11, 2024, at 2:00 p.m. in Courtroom 2 or as soon thereafter as the matter may be heard, at the United States District Courthouse located on the 14th floor of 501 I Street, Sacramento, CA 95814, defendant JOHN GALE ("Defendant") will, and hereby does, move the Court for an order granting partial summary judgment in his favor, and against Plaintiffs PAUL J. HALL and JENNETTE HALL (collectively, "Plaintiffs") with respect to the following claims in Plaintiffs' First Amended Complaint, pursuant to F.R.C.P. 56:

1.    Excessive Force (Fourth and Fourteenth Amendments) (42 U.S.C. § 1983);

2.    Deprivation of Rights (Eighth and Fourteenth Amendments) (42 U.S.C. § 1983);

622346.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

3.      Fourteenth Amendment (Substantive Due Process) (42 U.S.C. § 1983);

4.      Cal. Civ. Code Section § 52.1 (Bane Act);

5.      Assault; and

6.      Battery

This motion is made pursuant to Federal Rule of Civil Procedure, Rule 56, on the grounds that no genuine issue of material fact exists as to the above-mentioned claims, and Defendant is entitled to judgment as a matter of law. Specifically: the excessive force, assault, and battery claims all fail because the use of force was reasonable. The excessive force claim further fails because Defendant is entitled to qualified immunity.

The Fourteenth Amendment claims fail because excessive force belongs to the Fourth Amendment and because: (1) there was no purpose to harm Plaintiff unrelated to a legitimate law enforcement objective; and (2) no deliberate indifference by Ofc. Gale. The Eighth Amendment claim fails because Plaintiff was not a convicted prisoner at the time of the incident. The Eighth and Fourteenth Amendment claims also fail because Defendant is entitled to qualified immunity.

The Civil Code § 52.1 claim fails because no unreasonable force was used and because there was no specific intent to violate Plaintiff's civil rights.

This motion is further based on this Notice, on the Memorandum of Points and Authorities below, the Undisputed Material Facts, the declaration of Dale L. Allen, Jr. filed herewith, and all exhibits attached thereto, as well as the [proposed] order, the Court's file in this matter, and on such oral and/or documentary evidence as may be presented at the hearing of this motion.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF RELIEF SOUGHT

Defendant seeks an order granting partial summary judgment, in his favor, and against Plaintiffs, with respect to the following portions of Plaintiffs' First Amended Complaint: the first cause of action (excessive force under the Fourth and Fourteenth Amendments, per 42 U.S.C. § 1983); the second cause of action (deprivation of rights under the Eighth and Fourteenth Amendments, per 42 U.S.C. § 1983); the third cause of action (substantive due process under the Fourteenth Amendment, per 42 U.S.C. § 1983); the fourth cause of action (Civil Code § 52.1); the sixth cause of action (assault); and the seventh cause of action (battery).

Respectfully submitted,

Dated: November 6, 2023

ALLEN, GLAESSNER,
HAZELWOOD & WERTH, LLP

By:  __/s/ DALE L. ALLEN, JR.__
DALE L. ALLEN, JR.
Attorneys for Defendant
JOHN GALE

MSJ NOTICE & MPA
2:20-CV-01789-TLN-DMC

622346.1

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................... 1

A.   Defendant John Gale .................................................................... 2

B.   Incident ......................................................................................... 2

C.   Procedural Status ......................................................................... 4

III.   LEGAL ARGUMENT .............................................................................. 5

A.   Standard of Review ....................................................................... 5

B.   Fourth Amendment Use-of-Force Claim Fails Because Officer Used
Lawful Force ................................................................................. 5

1.   Nature of the Intrusion ...................................................... 6

2.   Governmental Interest ....................................................... 6

a.   Severity of the Crime ............................................. 6

b.   Threat ...................................................................... 7

c.   Active Resistance .................................................... 7

d.   Other Factors .......................................................... 7

3.   Balancing ........................................................................... 8

C.   No Fourteenth Amendment Claims .............................................. 9

1.   No Excessive Force Under the Fourteenth Amendment ....... 10

2.   No Due Process Violation ................................................... 10

D.   Eighth Amendment Fails as a Matter of Law .............................. 12

E.   Qualified Immunity on all Federal Causes of Action .................. 12

1.   No Constitutional Violation ................................................ 13

2.   Not Clearly Established ...................................................... 13

a.   Overview ................................................................. 13

b.   No Particularized Law for Fourth Amendment Claim .............. 14

c.   No Particularized Law for Fourteenth Amendment Claim ........ 17

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1                    d.       No Particularized Law for Eighth Amendment Claim ............... 17

2       F.      No Bane Act Violation Because Plaintiff No Requisite Mental State ............. 17

3       G.      No Assault or Battery ......................................................................... 18

4  IV.     CONCLUSION ............................................................................................. 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ NOTICE & MPA
2:20-CV-01789-TLN-DMC

622346.1

# TABLE OF AUTHORITIES

<u>Page</u>

**U.S. Supreme Court**

*Ashcroft v. al-Kidd*,
    131 S.Ct. 2074, 2083 (2011)..................................................................................16

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 325 (1986).........................................................................................8

Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843-844 (1998)....................................13

*Cornell, supra*, at 803 ..................................................................................................21

*County of Sacramento v. Lewis*,
    523 U.S. 833, 845 (1998).......................................................................................13

*Graham v. Connor*,
    490 U.S. 386, 388 (1989)..................................................................8, 9, 10, 11,13,19

*Harlow v. Fitzgerald*,
    457 U.S. 800, 818 (1982).......................................................................................15

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018)...........................................................................................17

*Malley v. Briggs*,
    475 U.S. 335, 341 (1986).......................................................................................15

*Saucier v. Katz*,
    533 U.S. 194, 206 (2001).......................................................................................15

*Scott v. Harris*,
    550 U.S. 372, 378 (2007).........................................................................................4

*Screws v. United States*
    *(1945) 325 U.S.* ...................................................................................................21

*U.S. v. Lanier*,
    520 US 259 (1997)..................................................................................................13

*White v. Pauly*,
    137 S. Ct. 548, 552 (2017)..................................................................................16,17

**Ninth Circuit Court of Appeals**

*Blanford v. Sacramento Cnty.*,
    406 F.3d 1110, 1115 (9th Cir. 2005) .....................................................................11

*Bryan v. MacPherson*,
    630 F.3d 805, 826 (9th Cir. 2010) .................................................................9,10,11,18

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

622346.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

# TABLE OF AUTHORITIES

Page

*Garcia v. United States,*
    826 F.2d 806, 808, 812-813 (9th Cir.1987) ................................................. 12

*Hernandez v. Town of Gilbert,*
    989 F.3d 739, 746, n. 3 (9th Cir. 2021) ...................................................... 18

*Hopkins v. Bonvicino,*
    573 F.3d 757, 762 (9th Cir. 2009) .............................................................. 16

*Lee v. City of Los Angeles,*
    250 F.3d 668, 686 (9th Cir. 2001). ........................................................15,20

*Long v. City & Cnty. of Honolulu,*
    511 F.3d 901 (9th Cir.2007) ...................................................................... 11

*Mattos v. Agarano,*
    661 F.3d 433, 448 (9th Cir. 2011) .............................................................. 18

*Moreland v. Las Vegas Metro. Police Dep't,*
    159 F.3d 365, 372 (9th Cir.1998) ............................................................... 13

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,*
    210 F.3d 1099, 1102 (9th Cir. 2000) ............................................................ 8

*Porter v. Osborn,*
    546 F. 3d 1131, 1137 (9th Cir. 2008) ......................................................... 13

*Reese v. Cty. of Sacramento,*
    888 F.3d 1030, 1045 (9th Cir. 2018) .......................................................... 21

*Scott v. Henrich,*
    39 F.3d 912, 914-916 (9th Cir. 1994) ......................................................... 12

*Shafer v. Cty. of Santa Barbara,*
    No. 15-56548, 2017 WL 3707904, at *6 (9th Cir. Aug. 29, 2017) ......................... 16

*Smith v. City of Hemet,*
    394 F.3d 689, 702 (9th Cir. 2005) .........................................................10,11

*Ward v. San Diego Cty.,*
    791 F.2d 1329, 1332 (9th Cir. 1986) .......................................................... 20

**Other Circuit Courts**

*Lamont v. New Jersey,*
    637 F.3d 177, 183 (3d Cir. 2011) .............................................................. 12

*Ramirez v. Guadarrama,*
    2 F.4th 506, 507 (5th Cir. 2021) ...................................................4,,9,11,12,18,19

622346.1

# TABLE OF AUTHORITIES

<u>Page</u>

*Smith v. Freland*,
   954 F.2d 343 (6th Cir. 1992) ................................................................................12

**Federal District Courts**

*Carter v. City of Fresno*,
   No. 1: 13-CV-00290-AWI, 2013 WL 3766525, at *3 (E.D. Cal. July 16, 2013)...................22

*Corona v. McCoy*,
   No. EDCV1300014MMMAJW, 2015 WL 13907205, at *5 (C.D. Cal. Sept. 8, 2015)..........15

*Estate of Moppin–Buckskin v. City of Oakland*,
   C 08–04328 CW, 2010 WL 147976 (N.D.Cal. Jan. 12, 20100 .................................................12

*Finley v. City of Oakland*,
   No. C 04-5102 MEJ, 2006 WL 269950, at *14 (N.D. Cal. Feb. 2, 2006)..............................22

*Foster v. City of Fresno*,
   392 F.Supp.2d 1140, 1159 (E.D.Cal.2005 ..................................................................12

**California Court of Appeals**

*B.B. v. Cty. of Los Angeles*,
   25 Cal. App. 5th 115, 133 ..................................................................................21

*Cornell v. City & Cty. of San Francisco*,
   17 Cal. App. 5th 766, 801-802 ..............................................................................21

*Edson v. City of Anaheim*
   (1998) 63 Cal.App.4th 1269, 1274-1275..................................................................21

**Federal Statutes and Law**

42 U.S.C. § 1983 ............................................................................................1, 3

F.R.C.P. 56(c) ..............................................................................................2,8

**California Statutes and Law**

Cal. Civ. Code Section § 52.1 ..............................................................................2,20

 Calif Penal Code 452(a) ....................................................................................9

Calif. Penal Code 452(b)....................................................................................9

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

622346.1

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether Officer Gale used reasonable force against Mr. Hall;

2.  Whether Officer Gale acted with a purpose to harm or, in the alternative, deliberate indifference in using force against Mr. Hall;

3.  Whether the Eighth Amendment applies to persons whom officers encounter in the field (as opposed to applying to convicted prisoners);

4.  Whether Officer Gale is entitled to qualified immunity; and

5.  Whether the requisite mental state has been satisfied for Plaintiff's Bane Act claim

## I.   INTRODUCTION

On October 12, 2019 Defendant Officer John Gale ("Defendant" or "Officer Gale") responded to a call from family members that Plaintiff Mr. Paul Hall ("Plaintiff" or "Mr. Hall") was threatening to kill himself after dousing himself in gasoline and was going to light himself on fire in the family home.   Officer Gale arrived, and only after multiple efforts to dissuade Mr. Hall both verbally and physically from using a lighter in his hand to light himself on file, used his taser on Mr. Hall.  At the moment in time he did so, Officer Gale believed that Mr. Hall had begun to activate the lighter, and given his close proximity to Mr. Hall, and the proximity of two of Hall's family members.  Officer Gale used his tase to try and stop Hall after exhausting other means to do so.   Mr. Hall caught fire, and was badly burned.

For the reasons explained below, partial summary judgment should be granted for Defendant because: (1) Officer Gale acted with appropriate use of force under the law; (2) there are no   Fourteenth or Eighth Amendment violations; (3) he is entitled to qualified immunity, including under *Ramirez v. Guadarrama*, 3 F.4th 129, 136 (5th Cir. 2021), cert. denied, 142 S. Ct. 2571, 213 L. Ed. 2d 1121 (2022); and (4) there is insufficient evidence for a Bane Act claim (no constitutional violation and no specific intent).

## II.   STATEMENT OF FACTS

Defendant refers to the Separate Statement of Undisputed Material Facts ("UMF"). Much of the UMF is taken from Ofc. Gale's body worn camera footage, which the Court may utilize under *Scott v. Harris*, 550 U.S. 372, 378 (2007). The video footage is attached to the motion as

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

Exhibit "B" to the concurrently-filed declaration of Dale L. Allen, Jr.

### A.  <u>Defendant John Gale</u>

John Gale attended the police Academy in the spring of 2015. [*UMF* No. 1]  Gale was trained on a taser in the police academy in 2015, with the Del Norte County Sheriff's Department, and again when hired by the City of Weed Police Department. [*UMF* No. 2]

Gale was trained to assess the use of taser under the totality of the circumstances for use of force and trained, to avoid using a taser in flammable hazard conditions, when possible. [*UMF* No. 3]

Gale was trained on a PowerPoint from the Taser company to avoid using a taser in the presence of inflammables and explosives. [*UMF* No. 4]

The taser training included a body camera video, showing a subject catching fire after being struck with a taser barb, when the person was covered with an inflammable and aware that a taser could ignite a person covered in inflammables. [*UMF* No. 5]

Gale's training on suicidal persons was to speak to them and gain rapport, then use physical force if verbal did not work, to try and remove the threat to the individual or the threat to others by the individual. [*UMF* No. 6]  Gale was a fully sworn police officer for the City of Weed at the time of the incident on October 12, 2019. [*UMF* No. 7]  Gale was aware that Department Policy, 309.5.2 stated that the CED (taser) should generally be avoided unless the totality of the circumstances indicates that other available options would reasonably appear ineffective, and would present a greater danger to the officer, subject or others, and the officer reasonably believes that the need to control the individual outweighs  the risk of using the device. [*UMF* No. 8]  Gale has been trained on the signs of symptoms of influence of methamphetamine, including fidgeting with the hands, erratic behavior, unintentional muscle spasms, and twitching of the body and jaw. [*UMF* No. 9]

### B.  <u>Incident</u>

Gale responded to a 911 call that Hall had doused himself with gasoline and was going to light himself on fire.  Lewin Hall advised that his father had a rope around his neck then doused himself with gasoline. [*UMF* No. 10]  Gale's body camera video accurately captures his attempt

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

622346.1

to de-escalate the situation. [*UMF* No. 11]  Hall was 6'1" tall and 180 pounds at time of incident. [*UMF* No. 12.]  Gale was 5'5" tall and 120 pounds at the time of the incident. [*UMF* No. 13.] Gale knew Paul J. Hall on the date of the incident. [*UMF* No. 14]  Gale's previous encounters with Hall did not involve suicidal ideation. Gale had heard from other officers prior to the incident that Hall had expressed suicidal intentions. [*UMF* No. 15]  Gale recalled the previous suicide incident with Hall involved firearms. [*UMF* No. 16]  Prior to the incident Gale had been told by other officers Hall used methamphetamine. [*UMF* No. 17]  The building was multilevel, and Gale knew there were either individuals or tenants actively in other portions of the building at the time of the incident. [*UMF* No. 18]  Gale's intention on arrival the day of the incident was to detain Hall for psychiatric evaluation under California Welfare and Institutions Code 5150 as a danger to himself or others. [*UMF* No. 19]   On arrival Gale entered the ground floor through a front door, where he encountered Mr. Hall, as depicted in the video. [*UMF* No. 20]  Gale first smelled gasoline when he reached the last room where Hall had locked himself in and where Gale had climbed in through an open window frame and was locked in as well. [*UMF* No. 21]  Gale tried to talk to Hall, de-escalate  and build rapport until he saw Hall actively trying to harm himself by putting his head through panes of glass and actively trying to cut himself on the windows. [*UMF* No. 22]  Gale also went hands on to subdue Hall's hand which had the lighter in it. [*UMF* No. 23]  Gale saw evidence of the influence of methamphetamine because of the bizarre statements of Hall and his actions. [*UMF* No. 24]  Gale physically confronted Hall and attempted to take the lighter away but could not. [*UMF* No. 25]  Gale could hear somebody just outside the room talking to Hall, which is on the video. [*UMF* No. 26]  Gale took out his taser and pointed the taser at Hall while advising dispatch Hall was getting ready to activate the lighter. [*UMF* No. 27]  A bystander relative is telling Hall to drop the lighter from his position outside the room. [*UMF* No. 28]  Gale starts counting down from three as a warning he is going to fire the taser if Hall does not drop the lighter  [*UMF* No. 29]  Gale testified the dangers to others was based on what he had been dispatched to; the presence of Hall's family on arrival; the family members being in the house, and the threat of Hall lighting himself on fire; as well as the active threat that Hall posed to Gale and Hall's verbal threats of Gale being harmed through the process Hall would

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ NOTICE & MPA
2:20-CV-01789-TLN-DMC

622346.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1   hurt himself. [*UMF* No. 30]  Gale hoped Hall would drop the lighter when faced with the taser.

2   Gale held the taser on Hall for approximately 20 seconds. Gale then used the taser to neutralize

3   the threat that Mr. Hall posed to himself, by causing a neuromuscular incapacitation so that Hall

4   would drop the lighter or Gale could remove the lighter from Hall's hand before Gale had to take

5   further action. [*UMF* No. 31]  Gale began a countdown from three to indicate he would tase Hall

6   because his physical force to disarm did not work and Hall said he would light himself on fire if

7   Hall used pepper spray. He did not make a conscious decision to tase Hall until Mr. Hall's

8   continued agitation and aggression made it a danger to Gale and to others. [*UMF* No. 32]  Gale

9   believed Hall was attempting to harm himself and Gale and had the clear means to do so with the

10  lighter as he was covered in gasoline, threatening to light himself on fire, and had made specific

11  threats after Gale tried to take the lighter away that if he did not let Hall and did not leave Gale

12  would be hurt and be lit on fire. [*UMF* No. 33]  Gale took into consideration department policy

13  309.52,  when using the taser on Hall. [*UMF* No. 34]  Gale believed a crime of assault against

14  him occurred when he was on duty as a police officer because Hall had an instrument other than a

15  firearm based on the facts Gale observed that Hall had possession of a lighter, and known

16  flammable fluid, and was in contact with Gale and was actively attempting to light himself on

17  fire.  Hall made statements that if Gale did not let him go, if Gale did not leave that Gale would

18  be injured, and Gale would subsequently be lit on fire as well. [*UMF* No. 35]  Gale saw Hall

19  actively attempting to click the lighter he had in his hand during the physical struggle.  [*UMF* No.

20  36]

21      **C.   Procedural Status**

22          Plaintiffs filed their First Amended Complaint ("FAC") on October 1, 2021, alleging eight

23  causes of action. (Dkt. No. 13.)  The first cause of action (Fourth Amendment and Fourteenth

24  Amendment– Excessive Force), second cause of action (Eighth and Fourteenth Amendment –

25  Deprivation of Rights) and third cause of action (Fourteenth Amendment – Substantive Due

26  Process) are alleged against Defendant Officer Gale only. (*Id.* at ¶¶ 8-30.) The fourth cause of

27  action (Bane Act) and fifth cause of action (Negligence of Public Employees) are alleged against

28  Defendants Gale and the City of Weed. (*Id.* at ¶¶ 31-42.)  The sixth cause of action (assault) and

MSJ NOTICE & MPA
2:20-CV-01789-TLN-DMC

seventh cause action (battery) are alleged against Ofc. Gale only. (*Id.* at ¶¶ 43-54.)  The eighth cause of action (loss of consortium) is alleged against the Gale and the City. (*Id.* at ¶¶ 55-57.)

Ofc Gale brings this motion on all the federal causes of action against him as well as the Bane Act, assault, and battery allegations.

## III.   LEGAL ARGUMENT

### A.  Standard of Review

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c) It pierces the pleadings and puts the opponent to the test of affirmatively coming forward with sufficient evidence for its claims to create a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In order to meet its initial burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) 1.

### B.  Fourth Amendment Use-of-Force Claim Fails Because Officer Used Lawful Force

A Fourth Amendment excessive force claim is analyzed under the objective reasonableness standard of *Graham v. Connor*, 490 U.S. 386, 388 (1989).

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determination of the reasonableness of the force used requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Id.* In making this determination, "[t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham, supra*, at 396.  The Supreme Court further counseled that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

622346.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

2  evolving—about the amount of force that is necessary in a particular situation." (*Id.*, at 396-397).

3  1.  Nature of the Intrusion

4  Officer Gale used a Taser against Plaintiff, which the Ninth Circuit has categorized as an

5  intermediate use-of-force.  *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (ruling that

6  use of a taser in dart mode is "an intermediate, significant level of force")

7  2.  Governmental Interest

8  The Ninth Circuit evaluates the governmental interest under three core factors: "severity of

9  the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

10  others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bryan,*

11  *supra,* at 826 (citing *Graham*). These factors are not exclusive: "whatever specific factors may be

12  appropriate in a particular case, whether or not listed in Graham," should be considered. *Bryan*,

13  *supra*, at 826 (citation omitted).

14  a.  *Severity of the Crime*

15  Officer Gale initially responded to a call about a man who wanted to kill himself.  He

16  learned the Plaintiff had doused himself in flammable liquids and told family members he was

17  going to light himself on fire. When Officer Gale arrived, he spoke to Plaintiff and learned

18  Plaintiff wanted to kill himself; Plaintiff refused Officer Gale's efforts to talk him into coming

19  outside for help. At the moment in time force was ultimately used against Plaintiff, the incident

20  concerned at least two crimes: felony arson (Calif. Penal Code 452(b)) and felony arson with

21  great bodily injury (Calif. Penal Code 452(a).) As noted by the Fifth Circuit in a similar case:

22

23  the severity of the threatened crime, *i.e.*, felony arson, was considerable. Olivas posed a
substantial and immediate risk of death or serious bodily injury to himself and everyone in
the house. He was covered in gasoline. He had been threatening to kill himself and burn

24  down the house. He appeared to be holding a lighter. At that point, there were at least six
other people in the house, all of whom were in danger.

25  *Ramirez v. Guadarrama*, 3 F.4th 129, 135 (5th Cir. 2021), cert. denied, 142 S. Ct. 2571, 213 L.

26  Ed. 2d 1121 (2022).[1]

27

28  [1] The Fifth Circuit initially issued *Ramirez* as an unpublished opinion before reissuing as a

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

b. *Threat*

The Ninth Circuit has made plain -- repeatedly -- the importance of the threat to officer safety: "the most important factor under *Graham* is whether the suspect posed an immediate threat to the safety of the officers or others." *Bryan*, *supra*, at 826 (citing *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc). Officer Gale observed Plaintiff drop his hand with the lighter to his side and appear to be flicking the lighter to start; Plaintiff posed an immediate and deadly threat. Successful activation of the lighter in his hand risked the lives of himself, Ofc. Gale, and Plaintiff's nearby relatives. This is identical to the deadly threat posed in *Ramirez*.

c. *Active Resistance*

Officer Gale attempted to deescalate and used his crisis intervention skill to first talk to Plaintiff and try and dissuade him from committing suicide. Gale , 5'5" and 120 lbs. used hands on force and control techniques, but Plaintiff, at 6'0" and 180 pounds, fought him off. Officer Gale again attempted to talk Plaintiff into dropping the lighter, joined by Plaintiff's son and nephew who were leaning into the room through open frame windows. One was shouting to Officer Gale to shoot Plaintiff, and one was yelling at Plaintiff to drop the lighter. The risk escalated Mr. Hall would light the room on fire and endanger themselves along with Officer Gale.

d. *Other Factors*

Non-*Graham* factors also demonstrate the governmental interest: *e.g*., attempts at de-escalation, verbal warning, lack of alternative means. Ofc. Gales worked with Plaintiff for over five minutes to try and get him to drop the lighter; to end the dangerous situation. Plaintiff refused. Only exhausting alternative (and lesser) means did Gale draw his taser. But even then the officer did not immediately deploy it. He still attempted to coax Plaintiff down, including giving him a countdown warning before using the device. Only when objective reasonable facts presented themselves that Plaintiff was going to activate the lighter in his hand did Gale finally deploy his Taser. At that juncture there was no viable alternative means. Both hands on and de-escalation had already proven ineffective, and Plaintiff informed Gale that he would light himself

published one.

MSJ NOTICE & MPA
2:20-CV-01789-TLN-DMC

622346.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  on fire if the officer used pepper spray. Nor were a dog or baton viable: no dog was on-scene and,

2  even if one was, neither would immediately seize-up Plaintiff's muscles (thereby preventing him

3  from triggering the lighter). The only force option besides a Taser was for Gale to escalate and go

4  to deadly force (*i.e.*, his firearm). There were no lesser alternative means available.

5       Gale also deployed his Taser in a volatile situation. It was not just himself and Plaintiff at-

6  risk amidst the gasoline and flame, but also Plaintiff's relatives, including those two just outside

7  the window. And any ensuing conflagration would have set the building itself afire, thereby

8  endangering any others in the building (or near the building), or any first responders who would

9  come and try to extinguish a blaze.

10       While Plaintiff did happen to be emotionally at-risk, that risk did not diminish his threat in

11  the moment. Nor did it immunize Plaintiff from his actions or prohibit Ofc. Gale from defending

12  against a deadly threat. The Ninth Circuit has explicitly rejected creating "two tracks of excessive

13  force analysis, one for the mentally ill and one for serious criminals." *Bryan v. MacPherson,* 630

14  F.3d 805, 829 (9th Cir. 2010). And as noted by the Fifth Circuit in the factually similar *Ramirez*

15  case: "Olivas may only have been threatening to harm himself, but he was threatening to do so in

16  a way that put everyone in the house (and possibly others) in danger." *Ramirez, supra,* at 136.

17       These other factors support the reasonableness of Ofc. Gale's force.

18                 3.  <u>Balancing</u>

19       Officer Gale's deployment of a Taser in response to the lethal threat posed by Mr. Hall is

20  consistent with *Graham* and Ninth Circuit precedent. See *Smith v. City of Hemet*, supra, at 703

21  ("where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified

22  in using deadly force.") See also *Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1115 (9th Cir. 2005)

23  (citation omitted) (deadly force "satisfies Fourth Amendment standards '[w]here the officer has

24  probable cause to believe that the suspect poses a threat of serious physical harm, either to the

25  officer or to others.") While the kinds of deadly threats posed by a subject are wide and varied –

26  *e.g.*, firearm, knife, sword, rock – the case law is not. Courts have uniformly held that officers may

27  defend themselves and others against such a threat. See *Long v. City & Cnty. of Honolulu*, 511 F.3d

28  901 (9th Cir.2007) (reasonable force by officer who fatally shot subject that raised rifle to chest-

622346.1

level and pointed it in officers' direction); *Scott v. Henrich*, 39 F.3d 912, 914-916 (9th Cir. 1994) (reasonable force by officer who fatally shot subject that had pointed gun at officers); *Garcia v. United States*, 826 F.2d 806, 808, 812-813 (9th Cir.1987) (reasonable force by officer who shot subject that brandished stick and rock); *Estate of Moppin–Buckskin v. City of Oakland*, C 08–04328 CW, 2010 WL 147976 (N.D.Cal. Jan. 12, 20100) ("belligerent behavior, reluctance to comply with commands, the lowering of his hands and reaching towards his waistband and his statement that he didn't 'give a fuck' if the officers shot him because he had been shot before, would lead a reasonable officer to believe he was reaching for a weapon."); *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1159 (E.D.Cal.2005 (lethal force justified where dangerous suspect in a series of armed robberies, who was believed to be armed, refused to comply with the officers' orders and returned his hand to his waistband area).

Officers need not incur physical injury before defending themselves. "Police officers do not enter into a suicide pact when they take an oath to uphold the Constitution." *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011). Officer Gale described the objective factors he faced; Mr. Hall was covered in gasoline, possessed a lighter, refused to put the lighter down despite de-escalation efforts, and threatened to light himself on fire with Defendant and others in the immediate vicinity. It was objectively reasonable for Defendant to fear for his safety and Gale to act to try and avert this deadly force by Plaintiff. And it was certainly reasonable for the officer to utilize non-deadly force to do so (just as the officer in *Ramirez*).

*Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) is instructive. The Sixth Circuit noted that "we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." *Smith*, *supra*, at 347.

### C. No Fourteenth Amendment Claims

Plaintiff alleges the Fourteenth Amendment three times in his Complaint: Fourteenth Amendment excessive force (first cause of action); Fourteenth Amendment deprivation rights (second cause of action); and Fourteenth Amendment due process (third cause of action). (Dkt. No.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

622346.1

1, ¶¶ 8-30).

1.   <u>No Excessive Force Under the Fourteenth Amendment</u>

This Fourteenth Amendment allegation fails as a matter of law. Pursuant to *U.S. v. Lanier*, 520 US 259 (1997), "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate--specific provision, not under the rubric of substantive due process." *Lanie*r, supra, at 272, n. 7. The Supreme Court has made clear that unlawful arrest and excessive force fall within the Fourth Amendment. *Graham v. O'Connor*, 490 U.S. 386, 395 (1989); Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843-844 (1998). The text of the Fourth Amendment also makes this plain. Plaintiff's Fourteenth Amendment excessive force claim is invalid and Defendant entitled to summary judgment.

2.   <u>No Due Process Violation</u>

Plaintiff's allegations of deprivation of rights and due process are two different ways of saying the same thing. He is making a substantive due process claim.

The Due Process clause of the Fourteenth Amendment protects against "arbitrary action of the government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (internal quotations and citations omitted). The Supreme Court has set a high threshold for "arbitrary" conduct: "[o]ur cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, *supra*, at 846 (internal quotations and citations omitted). The threshold is whether the conduct "shocks the conscience." (*Id.*) ("To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.").

In determining whether excessive force shocks the conscience, the court must first ask "whether the circumstances are such that actual deliberation [by the officer] is practical." *Porter v. Osborn*, 546 F. 3d 1131, 1137 (9th Cir. 2008) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir.1998) (internal quotation omitted). Put another way: the "critical question in determining the appropriate standard of culpability is whether the circumstances allowed the state actors time **to fully consider the potential consequences of**

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

**their conduct**." *Moreland*, *supra*, 159 F.3d, at 373 (emphasis added) (citations omitted). Where actual deliberation *is* practical, the "deliberate indifference" standard applies. *Porter,* at 1137. But where the officer makes a snap judgment because of an escalating situation, the plaintiff must prove the officer acted with purpose to harm unrelated to legitimate law enforcement objectives. *Id.* at 1139-1140. Examples of improper purpose include intent to terrorize. *Porter*, *supra*, at 1140-1141; or bullying a suspect or "getting even." *Wilkinson v. Torres*, 610 F. 3d 546 (9th Cir. 2010).

In *Porter,* the Ninth Circuit found actual deliberation was not practical where a five-minute altercation between the officers and victim evolved quickly and forced the officers to make "repeated split-second decisions." *Id.* at 1139. The Court noted that "deliberation" should not be interpreted in the narrow, technical sense, reasoning that the Supreme Court had rejected the deliberate indifference standard even in cases where an officer giving chase could have deliberated while pursuing the suspect. *Id.* at 1139–40.  Instead, the heightened purpose-to-harm standard applies where a suspect's evasive actions force the officers to act quickly. *Id.* at 1140.

Ofc. Gale's decision whether to deploy his Taser occurred in a split-second, as Hall attempted to activate his lighter and set ablaze his gasoline-soaked body (see UMF 31.)  Even the whole of the entire incident unfolded in a matter of minutes. There was no time for Gale to deliberate; the "purpose to harm" standard applies. There was no purpose to harm here. Ofc. Gale acted well-within the boundaries of legitimate law enforcement objectives – he acted to save the lives of Plaintiff, himself, and Plaintiff's family members.

Assuming, *arguendo*, the Court finds Officer Gale did have time to deliberate and utilizes the deliberate indifference standard, there is still no constitutional violation. There was no conscious disregard here. Officer Gale did not deploy the taser on a whim; he only fired in response to the threat posed by Mr. Hall. He had also given Plaintiff a countdown that he would use the taser if Hall did not drop the lighter.  Even then he did not immediately shoot, and only fired after Plaintiff took actions objectively viewed as attempting to activate the lighter.

**ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP**
180 Montgomery Street, Suite 1200
San Francisco, California 94104

### D.   Eighth Amendment Fails as a Matter of Law

Plaintiff's Eighth Amendment claim fails as a matter of law. This Amendment proscribes a freedom from cruel and unusual punishment. U.S. Const. Amend. VIII. Such prohibition only applies only after conviction and sentencing. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). The alleged force here occurred during a call-for-service. Because Plaintiff was not a convicted prisoner, the Eighth Amendment is inapplicable. See *Corona v. McCoy*, No. EDCV1300014MMMAJW, 2015 WL 13907205, at *5 (C.D. Cal. Sept. 8, 2015), report and recommendation adopted, No. EDCV1300014MMMAJW, 2015 WL 13907206 (C.D. Cal. Nov. 3, 2015) ("The FAC alleges violations of plaintiff's Fourth and Eighth Amendment rights. Because the Eighth Amendment protects the rights of convicted prisoners, not arrestees, it is inapplicable in this action.") (citations omitted).

### E.   Qualified Immunity on all Federal Causes of Action

Officer Gale is entitled to qualified immunity on all three federal causes of action. Public officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a deferential standard. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("qualified immunity … provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). With respect to excessive force claim in particular, the immunity "operates … to protect officers from the sometimes-hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citations and quotations omitted). The Court explained "[t]he deference owed officers facing suits for alleged excessive force is not different in some qualitative respect from the probable-cause inquiry in *Anderson* … in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable." *Saucier, supra*, at 206.

In analyzing a police officer's assertion of qualified immunity, the court must determine: (1) whether there was a violation of a constitutional right, and (2) whether the right was clearly

1    established such that a reasonable officer would understand his conduct violate that right. If the

2    alleged conduct violated a constitutional right, then the Court must determine "whether the right

3    was clearly established at the time of the alleged unlawful action." *Hopkins v. Bonvicino*, 573

4    F.3d 757, 762 (9th Cir. 2009) (internal citation and quotation omitted).

5                              1.    <u>No Constitutional Violation</u>

6          Officer Gale used reasonable force against Mr. Hall and did not violate his substantive due

7    process rights. Nor was there an Eighth Amendment violation. Assuming, *arguendo*, that any

8    violation did occur, none was clearly established.

9                              2.    <u>Not Clearly Established</u>

10                                   a.    *Overview*

11         A right is clearly established if -- at the time of the challenged conduct -- "every reasonable

12   official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131

13   S.Ct. 2074, 2083 (2011) (emphasis added) (internal citations and quotations omitted). The U.S.

14   Supreme Court has explained that while it "does not require a case directly on point . . . existing

15   precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*,

16   *supra*, at 2083 (2011) (internal citations). The *al-Kidd* Court also stressed that it had repeatedly told

17   courts, the Ninth Circuit in particular, not to define clearly established law at a high level of

18   generality. *Id.* at 2084. "The general proposition, for example, that an unreasonable search or

19   seizure violates the Fourth Amendment is of little help in determining whether the violative nature

20   of particular conduct is clearly established." (*Id.*)

21         The Supreme Court has reiterated the importance of factually similar scenarios when

22   deciding qualified immunity. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (granting qualified

23   immunity, the Court found the Tenth Circuit "failed to identify a case where an officer acting

24   under similar circumstances … was held to have violated the Fourth Amendment.") Per *White*,

25   Ofc. Gale is entitled to immunity unless Plaintiff can identify a case with similar circumstances.

26   *Shafer v. Cty. of Santa Barbara*, No. 15-56548, 2017 WL 3707904, at *6 (9th Cir. Aug. 29, 2017)

27   ("Shafer argues that it is Deputy Padilla's burden to demonstrate that he did not violate Shafer's

28   clearly established constitutional right. Again, we disagree. It is the plaintiff who bears the burden

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

13

1    of showing that the rights allegedly violated were clearly established.")

2         One year after *White*, in *Kisela v. Hughes*, 138 S. Ct. 1148 (2018), the Supreme Court

3    returned to the specificity required to deny qualified immunity. *Kisela* specifically addressed

4    excesssive force:

5         [S]pecificity is especially important in the Fourth Amendment context, where the Court
          has recognized that it is sometimes difficult for an officer to determine how the relevant
6         legal doctrine, here excessive force, will apply to the factual situation the officer
          confronts. Use of excessive force is an area of the law in which the result depends very
7         much on the facts of each case, and thus police officers are entitled to qualified immunity
          unless existing precedent squarely governs the specific facts at issue. Precedent involving
8         similar facts can help move a case beyond the otherwise "hazy border between excessive
          and acceptable force" and thereby provide an officer notice that a specific use of force is
9         unlawful.

10        *Kisela*, *supra*, at 1152-1153 (internal quotations and citations omitted)

11        Qualified immunity turns upon the law at the time of the incident. Here, the relevant date is

12   October 12, 2019.

13                     b.     *No Particularized Law for Fourth Amendment Claim*

14        For purposes of Fourth Amendment excessive force immunity, the question is as follows.

15   As of October 12, 2019, was it clearly established that Ofc. Gale could not use a Taser to stop an

16   individual who doused himself with gasoline, was holding a lighter, was threatening to activate

17   the lighter, and after the individual refused verbal efforts to drop the lighter and on whom

18   physical efforts failed to disarm the lighter? It was <u>not</u> so clearly established.

19        Framing the qualified immunity question with this level of specificity is consistent with

20   precedent. *E.g.*, *White*, *supra*, 549 (addressed whether an officer violated clearly established law

21   when, "having arrived late at an ongoing police action and having witnessed shots being fired by

22   one of several individuals in a house surrounded by other officers—[shot] and kill[ed] an armed

23   occupant of the house without first giving a warning."); *Wesby*, *supra*, at 591 (decided whether

24   officers entitled to qualified immunity where "officers found a group of people in a house that the

25   neighbors had identified as vacant, that appeared to be vacant, and that the partygoers were

26   treating as vacant. The group scattered, and some hid, at the sight of law enforcement. Their

27   explanations for being at the house were full of holes. The source of their claimed invitation

28   admitted that she had no right to be in the house, and the owner confirmed that fact.")

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

                                             14                    MSJ NOTICE & MPA
                                                                  2:20-CV-01789-TLN-DMC

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

The Ninth Circuit has been very clear that, where little to no authority exists, qualified immunity governs. *Bryan*, *supra*, at 833 (9th Cir. 2010) (en banc) (granting qualified immunity for dart-mode tasing where "there was no Supreme Court decision or decision of our court addressing whether the use of a taser, such as the Taser X26, in dart mode constituted an intermediate level of force."); *Mattos v. Agarano*, 661 F.3d 433, 448 (9th Cir. 2011) (en banc) (qualified immunity granted for drive-stun tasing where "there were three circuit courts of appeals cases rejecting claims that the use of a taser constituted excessive force; there were no circuit taser cases finding a Fourth Amendment violation."). The *Bryan* Court emphasized its rationale for granting qualified immunity: because of the "dearth of prior authority, we must conclude that a reasonable officer in Officer MacPherson's position could have made a reasonable mistake of law regarding the constitutionality of the taser use in the circumstances Officer MacPherson confronted in July 2005." *Bryan*, *supra*, at 833.

As of October 12, 2019, there was a dearth of case authority regarding the use of a Taser in arson-related situations (let alone in the factual particulars of this case). Defendant could not locate any Ninth Circuit or Supreme Court cases on the topic, nor any other Circuit cases.

To Defendant's knowledge, the only Circuit case in this area is *Ramirez v. Guadarrama*, 3 F.4th 129, 136 (5th Cir. 2021). Although *Ramirez* was issued in February 2021, it analyzed the law as of July 10, 2017. "While courts generally don't consider post-incident cases in determining "whether the law was clearly established at the time of the incident[,] ... post-incident cases that make a determination regarding the state of the law at the time of the incident are persuasive authority." *Hernandez v. Town of Gilbert*, 989 F.3d 739, 746, n. 3 (9th Cir. 2021) (ellipses original) (citations and internal quotation omitted).

*Ramirez* reached the Fifth Circuit on denial of qualified immunity on a Rule 12(b)(6) motion to dismiss. *Ramirez*, *supra*, at 132. The Fifth Circuit reversed and granted qualified immunity, finding no constitutional violation. *Id.*, at 132 and 137.

The *Ramirez* facts were as follows: on July 10, 2017, Gabriel Anthony Olivas called 911 and reported that his father was threatening to kill himself and burn down their house. Arlington Police Department officers responded. Officer Guadarrama was first on the scene, and he began

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

preparations while waiting for backup. Sergeant Jefferson and Officer Elliott were next to arrive, and the three of them entered the house. *Id.*, at 132.

Officer Guadarrama entered and noticed the odor of gasoline. A woman directed the officers to a corner bedroom on the side of the house. There police found Gabriel Eduardo Olivas leaning against a wall and holding a red gas can. Officer Elliott allegedly shouted to Sergeant Jefferson and Officer Guadarrama, "If we tase him, he is going to light on fire." Elliott discharged OC spray in Olivas's face, temporarily blinding him. Around this time Mr. Olivas doused himself in gasoline. At least of the officers observed Olivas holding some object that appeared as though it might be a lighter. One officer, and then another, fired his taser at the gasoline-soaked man, causing him to burst into flames. The house eventually burned to the ground. Police were able to evacuate the family members who had remained in the house, but Olivas was badly burned and later died. *Id.*, at 132.

On these facts the Fifth Circuit held that:

> [a]lthough the employment of tasers led to a tragic outcome, we cannot suggest exactly what alternative course the defendant officers should have followed that would have led to an outcome free of potential tragedy. We emphasize that the reasonableness of a government official's use of force must be judged from the perspective of a reasonable official on the scene, not with the benefit of 20/20 hindsight. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865. The fact that Olivas appeared to have the capability of setting himself on fire in an instant and, indeed, was threatening to do so, meant that the officers had no apparent options to avoid calamity. If, reviewing the facts in hindsight, it is still not apparent what might have been done differently to achieve a better outcome under these circumstances, then, certainly, we, who are separated from the moment by more than three years, cannot conclude that Guadarrama or Jefferson, in the exigencies of the moment, acted unreasonably.

*Ramirez*, *supra*, at 136.

The decision went on en banc; a 13–4 majority of the court declined to hear the matter. *Ramirez v. Guadarrama*, 2 F.4th 506, 507 (5th Cir. 2021) (en banc). In denying rehearing, a concurring opinion noted the:

> factually horrifying but—legally speaking—transparent qualified-immunity appeal. The unanimous panel opinion explains why we must grant immunity to Officer Jeremias Guadarrama and Sergeant Ebony Jefferson. See *Ramirez v. Guadarrama*, 844 F. App'x 710, 713–17 (5th Cir. 2021) (per curiam). The unanimous panel opinion also explains why we cannot quarterback from our Delphic shrines, three years later, the split-second decision-

622346.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1    making required of these officers in response to a suicidal man (1) doused in gasoline, (2)
2    reportedly high on methamphetamine, (3) screaming nonsense, (4) holding a lighter, and
     (5) threatening to set himself on fire and to burn down the home, occupied by six people,
3    which he had earlier covered in gasoline.

*Ramirez*, at 507 (en banc).

The lack of Supreme Court and Ninth Circuit authority on the instant question – coupled with *Ramirez* being the only out-of-Circuit decision (and finding reasonable force) – strongly favors qualified immunity here. There was nothing to inform Ofc. Gale deploying a Taser in these circumstances would be unconstitutional. The Ninth Circuit does not "require of most government officials the kind of legal scholarship normally associated with law professors and academicians. A reasonable person standard adheres at all times." *Ward v. San Diego Cty.*, 791 F.2d 1329, 1332 (9th Cir. 1986). Every reasonable officer would not have known that deploying a Taser here would be excessive force. Ofc. Gale is entitled to qualified immunity.

c.      *No Particularized Law for Fourteenth Amendment Claim*

The above Fourth Amendment qualified immunity analysis equally applies to Plaintiff's Fourteenth Amendment substantive due process claim. Due Process is a higher threshold and reasonable force. The law that did not clearly establish Ofc. Gale's actions were excessive force also did not establish that they constituted arbitrary government conduct (either purpose to harm or deliberate indifference). On the contrary, as illustrated by *Ramirez*, the state of the law in October 2019 would have informed Ofc. Gale his actions were lawful.

d.      *No Particularized Law for Eighth Amendment Claim*

At the time of the the incident, Ofc. Gale would not have known his actions violated the Eighth Amendment. That is because, in addition to the law informing him his force was reasonable, the Ninth Circuit had also stated for nearly 20 years (since 2001) that the amendment only applied after conviction and sentencing. See *Lee*, *supra*. Ofc. Gale would have had no reason to believe Eighth Amendment protections extended to a member of the public on a call for service.

**F.   No Bane Act Violation Because Plaintiff No Requisite Mental State**

Plaintiff alleges Bane Act against all defendants. Civil Code § 52.1(b) bars the interference "by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion,

622346.1

1    with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution

2    or laws of the United States, or of the rights secured by the Constitution or laws of this state …"

3    The threshold for Civil Code § 52.1 liability is as follows: "where, as here, [an individually-

4    protected right] is properly pleaded and proved, the egregiousness required by Section 52.1 is tested

5    by whether the circumstances indicate the arresting officer had a specific intent to violate the

6    arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows

7    something beyond the coercion "inherent" in the wrongful detention. *Cornell v. City & Cty. of San*

8    *Francisco*, 17 Cal. App. 5th 766, 801-802, as modified (Nov. 17, 2017), review denied (Feb. 28,

9    2018) (citations omitted). See also *B.B. v. Cty. of Los Angeles*, 25 Cal. App. 5th 115, 133 [review

10   granted by California Supreme Court on October 10, 2018, see *B. (B.) v. Cty. of Los Angeles*, 428

11   P.3d 178 (Cal. 2018)] ("Like *Cornell* and *Reese*, we conclude that, to establish liability under the

12   Bane Act, a plaintiff must prove the defendant acted with a specific intent to *violate the plaintiff's*

13   *civil rights."*)

14        *The Cornell Court cited Screws v. United States (1945) 325 U.S. 91 for* Cornell's law on

15   specific intent. *Cornell*, *supra*, at 801-803. Proving specific intent requires showing that the

16   defendant acted "with the particular purpose of depriving the citizen victim of his enjoyment of the

17   interests protected by that ... right" *Cornell*, *supra*, at 803 (internal quotations and citations

18   omitted). See also *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) (in excessive

19   force context, must show that defendant "intended not only the force, but its unreasonableness, its

20   character as 'more than necessary under the circumstances.' " Defendant is not liable under Civil

21   Code § 52.1 because there was no specific intent to deprive Plaintiff of a constitutional violation.

22   Rather, Officer Gale was acting for a specific law enforcement purpose – to stop someone posing

23   a deadly threat to himself, Ofc. Gale, and others. The officer is also not liable under the Bane Act

24   because there was no constitutional violation here: no excessive force, no substantive due process

25   violation, and no Eighth Amendment violation.

## G.    No Assault or Battery

27        State-law battery claims mirror the federal-law excessive force claims. *Edson v. City of*

28   *Anaheim* (1998) 63 Cal.App.4th 1269, 1274-1275. Assault also requires unreasonable force.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

18

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  *Finley v. City of Oakland*, No. C 04-5102 MEJ, 2006 WL 269950, at *14 (N.D. Cal. Feb. 2, 2006)

2  ("Where a police officer is the defendant, the plaintiff must prove unreasonable force as an

3  additional element of these torts. While *Edson* addressed the tort of battery and did not

4  specifically mention assault, the reasoning used by that court to find that a plaintiff must show

5  unreasonable force when alleging battery against a police officer applies equally to an assault

6  claim.") (internal citation omitted). See also *Carter v. City of Fresno*, No. 1: 13-CV-00290-AWI,

7  2013 WL 3766525, at *3 (E.D. Cal. July 16, 2013).

8        Plaintiff's assault and battery claims fails because Ofc. Gale used reasonable force. See

9  Section III(B).

10  **IV.**   **CONCLUSION**

11        Defendant respectfully request the Court grant his motion for summary judgment or, in

12  the alternative, partial summary judgment.

13

14                                Respectfully submitted,

15  Dated:  November 6, 2023              ALLEN, GLAESSNER,

16                                HAZELWOOD & WERTH, LLP

17                            By:   */s/ DALE L. ALLEN, JR.*

18                                DALE L. ALLEN, JR.
                              Attorneys for Defendant

19                                JOHN GALE

20

21

22

23

24

25

26

27

28

MSJ NOTICE & MPA
2:20-CV-01789-TLN-DMC

622346.1