JOSEPH J. BABICH, ESQ. / SBN: 096290
jbabich@dbbwc.com
SEAN D. WISMAN ESQ. / SBN: 296420
swisman@dbbwc.com
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, CA 95826
Telephone:  (916) 379-3500
Facsimile:  (916) 379-3599
DBBWC-ESERVICE@dbbwc.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL J. HALL and JEANNETTE HALL,<br><br>     Plaintiffs,<br><br>     v.<br><br>CITY OF WEED, JOHN GALE, and DOES 1 through 10, inclusive,<br><br>     Defendants. | Case No.: 2:20-cv-01789-TLN-DMC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT CITY OF WEED'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     January 11, 2024<br>Time:    2:00 p.m.<br>Dept.:   Courtroom 2, 15th Floor |

**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant City of Weed's Motion for Summary Judgment**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................1

II.   STATEMENT OF FACTS .....................................................................................1

    A.    The Subject Incident and Immediate Aftermath..............................................1

    B.    Use of Force Review and Defendant John Gale's Retraining and Termination...............4

    C.    Defendant John Gale's Background, Training, and Experience.....................................4

    D.    Opinions of Plaintiffs' Retained Experts ...........................................................5

        1.    Expert Opinions of Scott DeFoe .............................................................5

        2.    Expert Opinions of Jason Fries ..............................................................6

    E.    Testimony of Defendant John Gale's Fellow Officers ......................................7

        1.    Testimony of City of Weed Police Department Chief Justin Mayberry.............7

        2.    Testimony of Former City of Weed Police Department Chief Martin Nicholas..7

        3.    Testimony of City of Weed Police Department Corporal Tim Green ................8

    F.    Defendant John Gale's Claims and Contentions ...............................................8

III.  ARGUMENT ........................................................................................................9

    A.    Plaintiff Paul J. Hall Can Sustain a Claim Under the Bane Act .......................9

        1.    Defendant John Gale Used Force That Was Excessive Under the State and Federal Constitutions ..............................................................11

        2.    Plaintiff's Bane Act Claim Does Not Implicate the Eighth Amendment or Substantive Due Process Under the Fourteenth Amendment ............................17

        3.    Plaintiff Can Prove the Required Mental State for a Bane Act Claim...............17

    B.    Plaintiffs Can Sustain a Claim Predicated on Negligence ..............................18

    C.    Plaintiff Jeannette Lewin Can Sustain a Claim for Loss of Consortium ........20

IV.  CONCLUSION....................................................................................................20

**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant City of Weed's Motion for Summary Judgment**

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968 (2013)..................................................................10, 17

*Bryan v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010) ........................................................16

*Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ...........................................................9

*Chaudry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) ................................................9

*Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766 (2017)...............................9, 17

*Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003) ..............................10

*Espinosa v. City & County of San Francisco*, 598 F.3d 528 (9th Cir. 2010) ...................................10, 16

*Graham v. Connor*, 490 U.S. 386 (1989) ...........................................................9, 10, 14, 15, 16

*Gravelit-Blondin v. Shelton*, 728 F.3d 1086 (9th Cir. 2013) .....................................................15, 16

*Hayes v. Cnty. of San Diego*, 57 Cal.4th 622 (2013) ..............................................................10, 18

*Hayes v. Cnty. of San Diego*, 736 F.3d 1223 (9th Cir. 2013) ......................................................19

*Hernandez v. City of Pomona*, 46 Cal.4th 501 (2009)...............................................................19

*Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003) ................................................................10

*Price v. Sery*, 513 F.3d 962, 968 (9th Cir. 2008)...................................................................10

*Ramirez v. Guadarrama*, 3 F.4th 129 (5th Cir. 2021) ..........................................................13, 14, 15

*Ramirez v. Guadarrama*, 142 S. Ct. 2571 (2022)..................................................................13, 14

*Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002)................................................................10

*Scott v. Harris*, 550 U.S. 372 (2007) ...............................................................................10

*Stephens v. N.J. State Police (In re Gibbons)*, 969 F.3d 419 (1st Cir. 2020) ........................................15

*Tenn. v. Garner*, 471 U.S. 1, 7 (1985) ...........................................................................9, 10, 14

*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021)............................................................9

**Statutes & Jury Instructions:**

42 U.S.C. § 1983..................................................................................................9, 15

Cal. Civ. Code § 52.1..............................................................................................1, 9, 17

Cal. Civ. Code § 52.1(b)...........................................................................................9

Cal. Civ. Code § 52.1(c)...........................................................................................9

**Plaintiffs' Memorandum of Points and Authorities in Opposition to
Defendant City of Weed's Motion for Summary Judgment**

Cal. Gov. Code § 815.2 ............................................................................................. 1, 18

Cal. Gov. Code § 820 ................................................................................................ 1, 18

Ninth Circuit Model Civil Jury Instruction 9.25 .......................................................... 9

**Plaintiffs' Memorandum of Points and Authorities in Opposition to
Defendant City of Weed's Motion for Summary Judgment**

## I. INTRODUCTION

Plaintiffs PAUL J. HALL (hereinafter, "Mr. HALL") and JEANNETTE LEWIN (hereinafter, "Ms. LEWIN") oppose Defendant CITY OF WEED's (hereinafter, "CITY") Motion for Summary Judgment (hereinafter, "MSJ"). CITY's Motion seeks summary judgment as to Mr. HALL's fourth cause of action for deprivation of rights under Cal. Civ. Code §52.1 (the "Bane Act"), Mr. HALL's fifth cause of action for negligence of public employees in the course and scope of their employment under Cal. Gov. Code §§ 815.2 and 820, and Ms. LEWIN's cause of action for loss of consortium. CITY's argument is that Mr. HALL's fourth and fifth causes of action lack merit because Defendant JOHN GALE's (hereinafter, "Mr. GALE") use of a Taser on Mr. HALL while he was doused in gasoline was reasonable and that Mr. GALE had no other reasonable options available to him. Plaintiffs oppose CITY's MSJ on the opposite grounds: that Mr. GALE's use of a Taser on Mr. HALL while he was doused in gasoline was unreasonable and that Mr. GALE had many other, more reasonable options available to him that would have resulted in lesser or no injuries at all to Mr. HALL. The contrasting positions of, and disputed material facts relied upon by, Mr. HALL, Ms. LEWIN, and CITY demonstrate there are many genuine disputes as to many material facts in this case, and that CITY is not entitled to judgment as a matter of law. Accordingly, CITY's MSJ should be denied.

## II. STATEMENT OF FACTS

### A.    The Subject Incident and Immediate Aftermath

Plaintiffs cite 193 material disputed facts in Plaintiffs' Statement of Disputed Facts in Opposition to Defendant City of Weed's MSJ (hereinafter, "PSDF"). *See* PSDF, Nos. 1-193.  There are so many disputed facts that they cannot all be discussed within the confines of this Memorandum.

This case arises from an incident that occurred in Weed, California on October 12, 2019. Declaration of Sean D. Wisman (hereinafter, "S. Wisman Decl."), ¶ 5, Ex. C ("Gale Depo."), pp. 109:4-110:1.  That day, Mr. HALL was in a dark place. S. Wisman Decl., ¶ 4, Ex. B (hereinafter, "Lewin Depo."), p. 93:15-25. He had doused himself with gasoline, telling his family he was going to light himself on fire. Lewin Depo., p. 78:16-23. With this crisis unfolding in front of them, Mr. HALL's family called CITY police for help. Lewin Depo., p. 99:21-100:02.

///

---

**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant City of Weed's Motion for Summary Judgment**

While out on patrol for the City of Weed Police Department, Mr. GALE was dispatched to Mr. HALL's home at 1:24 p.m. Gale Depo., pp. 111:17-115:3, Ex. 9. Prior to his arrival, dispatch informed Mr. GALE that Mr. HALL was expressing suicidal ideations and threatening to light himself on fire with gasoline. Gale Depo., pp. 111:22-112:6. Prior to arriving, Mr. GALE knew that Mr. HALL had flammable fluids on him and that he would potentially catch on fire. Gale Depo., pp. 54:14-22, 98:24-99:9; S. Wisman Decl., ¶ 9, Ex. G (hereinafter, "Gale Admin. Interview"), p. 14:13-19. Mr. GALE had a fire extinguisher in his squad car but did not look for a fire extinguisher before he encountered Mr. HALL, and never asked for a fire extinguisher that day. Gale Depo., pp. 53:25-54:7, 96:5-7, 98:4-12.

Mr. GALE entered Mr. HALL's home through the front door on the ground floor, without a fire extinguisher. Lewin Depo., p. 139:14-18; Gale Depo., pp. 54:8-13, 88:21-89:18. He entered the next room, a kitchen or utility room area, which is where he encountered and began engaging Mr. HALL. Gale Depo., pp. 89:19-90:2, 116:8-18., Ex. 9. From the room in which Mr. GALE first started speaking with Mr. HALL, Mr. HALL reached through the opening in the top half of the door to the adjacent back room and unlocked the door from the other side, in plain view of Mr. GALE and his body-worn camera, and then entered the back room, closing the door behind him. Gale Depo., pp. 90:25-92:25; Lewin Depo., pp. 107:13-108:6; Declaration of Justin Mayberry (hereinafter, "Mayberry Decl."), ¶ 4, Ex. F (hereinafter, "Video"), at 0:00:48-58. Mr. GALE followed by jumping through the opening in the door to enter the back room, and it was there in the back room where the tasing encounter with Mr. HALL occurred. Gale Depo., pp. 90:25-92:25; Video, at 0:00:58-0:06:33.

Mr. GALE smelled gasoline upon entering the back room. Gale Depo., p. 100:2-5. At that time, Mr. GALE believed that Mr. HALL was under the influence of methamphetamine. Gale Depo., pp. 45:3-15, 132:10-133:12; Gale Admin. Interview, p. 14:13-19. He could have exited the back room by unlocking and opening the door like he saw Mr. HALL do, or kicking the same door open, or climbing out through the top half of the door through which he entered, or exiting through one of two windows, or exiting through the back door behind Mr. HALL. Video, at 0:00:48-0:06:42. Instead, within two minutes of entering the back room, Mr. GALE made the decision to go "hands-on" with Mr. HALL. Gale Depo., pp. 129:20-131:1. Mr. GALE then tried grabbing the lighter from Mr. HALL, and Mr. HALL twisted his body and shielded himself. Hall Depo., pp. 139:17-140:1; Video, at 0:00:00-0:06:33.

---

-2-

Plaintiffs' Memorandum of Points and Authorities in Opposition to
Defendant City of Weed's Motion for Summary Judgment

Mr. HALL said to Mr. GALE during their interaction over 40 times: "it's not safe," "step back," "go," "be safe," "take care of yourself," "take care of everybody you love," "I'm just trying to go be safe," "take care of what's important to you," "go be happy," "I don't want to hurt you, "I don't want anything to happen," or variations thereof. Video, at 0:00:42-0:05:08; S. Wisman Decl., ¶ 11, Ex. H (hereinafter, "Video Tran."), pp. 2:8-10:13; Lewin Depo., pp. 110:21-111:3. During this time, Mr. HALL did not attempt to flick his lighter because he knew it would light himself on fire. S. Wisman Decl., ¶ 3, Ex. A ("Hall Depo."), p. 137:6-12; Video, at 0:01:09-0:06:33. Defendant JOHN GALE had OC (a.k.a. pepper) spray on him but decided not to use it. Gale Depo., p. 138:10-19.

Mr. GALE was 5-10 feet away from Mr. HALL when he pulled his Taser out. Gale Depo., pp. 136:13-137:7. Mr. GALE hoped that Mr. HALL would drop the lighter before he Tased him. Gale Depo., p. 140:2-5. After Mr. GALE aimed his Taser at Mr. HALL while screaming commands at him to "put it down," Mr. HALL complied by moving his hand holding the lighter down by his side. Video, at 0:06:05-32. Both of Mr. HALL's hands were relaxed, down, and by his side prior to and at the moment Mr. GALE fired his Taser at Mr. HALL. Video, at 0:06:05-32. Mr. GALE knew at the time he pulled the trigger on his Taser there was a risk of Mr. HALL igniting. Gale Depo., p. 141:6-8. Mr. GALE was aware that Mr. HALL could have died as a result of being Tased. Gale Depo., pp. 77:16-78:8. In targeting Mr. HALL with his Taser, Mr. GALE did not consider avoiding areas of Mr. HALL's body that were covered in gasoline. Gale Depo., p. 106:2-20. Mr. GALE then fired his Taser at Mr. HALL and Mr. HALL immediately erupted in flames after the Taser probes struck Mr. HALL's body and the electrical charge first started to occur. Gale Depo., p. 171:1-11; Video, at 0:06:31-33. Mr. HALL recalls hearing the words, "Taser, Taser, Taser," Mr. GALE smiling at him, then being Tased. Hall Depo., pp. 152:25-154:1.

Even while engulfed in flames, Mr. HALL was able to open and exit through the door to the back room which Mr. GALE had jumped through to enter the room. Video, at 0:06:40-42. Mr. GALE believes he tackled Mr. HALL after he ran out onto Main Street, and then he helped remove the burning clothing from Mr. HALL. Gale Depo., pp. 153:21-154:2, 154:7-12. Mr. HALL was on fire for about 60 seconds. Video, at 0:06:33-0:07:33. By the time Ms. LEWIN returned outside with a fire extinguisher, Mr. HALL was on the ground and the fire was out. Lewin Depo., p. 120:7-15. After Mr.

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

HALL's burning clothing was removed, Mr. GALE held Mr. HALL down on the street, naked and without cover, for minutes on end. Video, at 0:07:33-0:11:58.

While on Main Street after the flames on Mr. HALL had been put out, Plaintiffs and other witnesses blamed Mr. GALE for lighting Mr. HALL on fire. Video, at 0:07:40-45, 0:07:55-59, 0:08:59-0:09:01, 0:09:04-09, 0:09:19-20, 0:10:08-10, and 0:13:02-08; Video Tran., pp. 15:14-18, 16:3-4, 18:19-23, 19:2-3, 19:8-9, 21:2-5, and 26:3-4; Gale Depo., pp. 159:14-21, 159:22-161:1, and 163:18-24. Mr. GALE repeatedly told everyone on scene, including Plaintiffs, another officer, and everyone else within earshot, despite eyewitnesses correcting him numerous times, that Mr. HALL lit himself on fire. Video, at 0:10:13-20 and 0:12:27-33; Video Tran., pp. 21:7-12 and 25:11-17; Lewin Depo., pp. 121:15-122:7 and 122:14-19; Gale Depo., pp. 166:23-168:9. Ms. LEWIN asked Mr. GALE, "Why would you do this, sir?" Mr. GALE responded by stating, "I'm sorry." Video, at 0:13:53-58; Video Tran., p. 26:19-23. The first thoughts Mr. HALL had upon waking up out of his coma following the incident were nightmares of Mr. GALE smiling at him. Hall Depo., pp. 153:24-154:9.

**B.    Use of Force Review and Defendant John Gale's Retraining and Termination**

A Use of Force Review was conducted after the incident and found that Mr. GALE violated the City of Weed Police Department's policy by using his Taser in the incident. Gale Depo., pp. 25:16-26:2. Mr. GALE's use of force was also deemed within policy by the Use of Force Review Board, but that use of force referred to by the Board was not identified and could refer to Mr. GALE's physical attempt to take the lighter from Mr. HALL, which was a use of force according to former Chief Nicholas. Gale Depo., Ex. 11-12; Nicholas Depo., pp. 22:17-23:9.

**C.    Defendant John Gale's Background, Training, and Experience**

During his employment with CITY, Mr. GALE was trained to recognize when people were on methamphetamine and he encountered people who were on methamphetamine. Gale Depo., pp. 33:23-34:9, 45:12-24. Mr. GALE received Taser training from the Del Norte County Sheriff's Office, the City of Weed Police Department, and the police academy he attended, all before the incident. He had been Tased himself during training. Gale Depo., pp. 55:14-60:2. During Mr. GALE's Taser training at the police academy, he was taught to avoid using a Taser in known flammable conditions. Gale Depo., pp. 60:13-62:19. Mr. GALE is familiar with and was trained with Taser handheld warnings and instructions

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

before the incident. Gale Depo., pp. 62:20-63:19, Ex. 6.  He is familiar with and was trained with an Axon Taser PowerPoint presentation by the City of Weed Police Department, the Del Norte County Sheriff's Office, and the police academy. Gale Depo., pp. 62:20-64:23, Ex. 7. He was aware through his training that while using a Taser he should avoid flammables and explosives. Gale Depo., pp. 64:24-66:18, Ex. 6-8. Mr. GALE saw three videos in training in which a Taser was deployed on individuals who then caught on fire, including at least one such video pre-incident. Gale Depo., pp. 66:19-68:18. Mr. GALE understood that a Taser could ignite explosive materials, liquids, fumes, gases, vapors, and other flammable substances. Gale Depo., pp. 69:19-70:10.

Before the incident, Mr. GALE was aware of the City of Weed Police Department's policies regarding use of force and Tasers, including the policy that Tasers should not be used on individuals who have been recently sprayed with a flammable chemical agent or who are otherwise in close proximity to any known combustible vapor or flammable material, including alcohol-based oleoresin capsicum (OC) spray, and individuals whose position or activity may result in collateral injury (e.g., falls from height, operating vehicles). Gale Depo., pp. 72:18-73:2, 73:3-8, 73:9-74:1, 74:2-75:14, 75:15-19, Ex. 3.

Before the incident, Mr. GALE learned of Mr. HALL having expressed intentions to commit suicide from Officer Sam Hopkins, Corporal Tim Green, Sergeant Jared Klomparens, Chief Justin Mayberry, and deputies from the Siskiyou County Sheriff's office. Gale Depo., pp. 40:19-41:12. Mr. GALE never previously had an encounter with Mr. HALL in which Mr. HALL threatened him or any third party with violence. Gale Depo., pp. 43:24-44:11.

### D.      Opinions of Plaintiffs' Retained Experts

#### 1.      *Expert Opinions of Scott DeFoe*

Mr. GALE failed to initially determine that Mr. HALL was mentally ill, experiencing a mental crisis, intoxicated and or under the influence of a controlled substance. Declaration of Scott DeFoe (hereinafter, "S. DeFoe Decl."), ¶¶ 24-25 and 27; S. DeFoe Decl., ¶ 23, Ex. A (hereinafter, "S. DeFoe Report"); Video, at 0:00:00-0:06:33. Mr. GALE failed to use de-escalation and defusing techniques during his interactions with Mr. HALL. S. DeFoe Decl., ¶¶ 24-25 and 32; S. DeFoe Report; Video, at 0:00:00-0:06:33. Mr. GALE failed to comply with Weed Police Department, Crisis Intervention

-5-

Incidents, Policy No. 466, 6/26/19; Weed Police Department, Weed PD Policy Manual, Conducted Energy Device, Policy 309, 6/26/19; and Weed Police Department, Weed PD Policy Manual, Use of Force, Policy 300, 6/26/19; and others. S. DeFoe Decl., ¶¶ 24-25, 45, 80, 90; S. DeFoe Report; Video, at 0:00:00-0:06:33; Gale Depo., Ex. 1-5.

Mr. GALE failed to wait for additional Police Officers and the Weed City Fire Department to arrive to formulate a Tactical and Fire Plan, which should have outlined Less than Lethal Force options. S. DeFoe Decl., ¶¶ 24-25 and 52; S. DeFoe Report; Video, at 0:00:00-0:06:33. Mr. GALE should have used a bullhorn or the Public Address (PA) system on his police vehicle and advised Mr. HALL that they are there to help him, but they would need to him to exit his residence. If that proven tactic were unsuccessful, Mr. GALE could have obtained Mr. HALL's cellular phone number and contacted him in an attempt to establish dialogue. If he was unsuccessful in contacting Mr. HALL or if Mr. HALL refused to exit the residence, the Siskiyou County Sheriff's Special Weapons and Tactics (SWAT) and the Crisis Negotiation Team (CNT) should have been requested to assist with the incident. S. DeFoe Decl., ¶¶ 24-25 and 65; S. DeFoe Report; Video, at 0:00:00-0:06:33. Mr. GALE should have ensured that the HALL family was evacuated and in a safe location as well as any neighboring locations or individuals and wait with his fire extinguisher in the event Mr. HALL lit himself or the structure on fire. S. DeFoe Decl., ¶¶ 24-25 and 48; S. DeFoe Report; Video, at 0:00:00-0:06:33.

Mr. GALE should not have unholstered his Taser at any point during this incident and by doing so he unnecessarily escalated the situation. S. DeFoe Decl., ¶¶ 24-25 and 79; S. DeFoe Report; Video, at 0:00:00-0:06:33. Mr. GALE used inappropriate and unreasonable and potentially deadly force when he deployed his Taser X7 Conducted Energy Device (CED), causing Mr. HALL to burst into flames and ultimately causing Great Bodily Injury. S. DeFoe Decl., ¶¶ 24-25 and 77; S. DeFoe Report; Video, at 0:00:00-0:06:33.

### 2.   *Expert Opinions of Jason Fries*

Mr. HALL's thumb was on the side of the lighter while he was holding it. Declaration of Jason Fries (hereinafter, "J. Fries Decl."), ¶¶ 14-15 and 21; J. Fries Decl., ¶ 13, Ex. A (hereinafter, "J. Fries Report"); J. Fries Decl., ¶ 40, Ex. C; Video, at 0:00:00-0:06:33. At no point did Mr. HALL's thumb ///

-6-

**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant City of Weed's Motion for Summary Judgment**

leave the side of the lighter. J. Fries Decl., ¶¶ 14-15 and 21; J. Fries Report; J. Fries Decl., ¶ 40, Ex. C; Video, at 0:00:00-0:06:33.

Mr. HALL could not be the source of ignition seen in the Body-Worn Camera (BWC) video. J. Fries Decl., ¶¶ 14-15 and 22-27; J. Fries Report; J. Fries Decl., ¶ 41, Ex. D; Video, at 0:06:31-33. There is no evidence that Mr. HALL made any movements indicating that he attempted to use his lighter to ignite himself.  J. Fries Decl., ¶¶ 14-15 and 28-35; J. Fries Report; J. Fries Decl., ¶¶ 42-45, Ex. E-H; Video, at 0:00:00-0:06:33. Mr. HALL never attempted to use his lighter after he was Tased. J. Fries Decl., ¶¶ 14-15 and 28-35; J. Fries Report; J. Fries Decl., ¶¶ 42-45, Ex. E-H; Video, at 0:06:31-33. A Taser can, and is most likely the cause of the fire that injured Mr. HALL. J. Fries Decl., ¶¶ 14-15 and 28-36; J. Fries Report; J. Fries Decl., ¶¶ 42-45, Ex. E-H; Video, at 0:06:31-33.

**E.      Testimony of Defendant John Gale's Fellow Officers**

**1.      *Testimony of City of Weed Police Department Chief Justin Mayberry***

Both Taser training documents Mr. GALE received from the City of Weed Police Department emphasized avoiding using a Taser near flammable materials or when someone is doused with gasoline. S. Wisman Decl., ¶ 6, Ex. D (hereinafter, "Mayberry Depo."), pp. 35:12-36:11. City of Weed Police Department Chief Justin Mayberry believes it was highly dangerous for Mr. GALE to go through the window and into the room in which the subject incident occurred, and that he doesn't know if he would have gone through that window into that room himself. Mayberry Depo., p. 56:13-24. He believes Mr. GALE placed himself in a dangerous position during the incident, that it was dangerous for him to use a Taser with flammable materials on Mr. HALL, and that he was critical of Mr. GALE for that. Mayberry Depo., p. 24:9-24. Chief Mayberry also believes Mr. GALE inappropriately Tased somebody who was flammable. Mayberry Depo., pp. 22:2-23:7. He would not have used the Taser in the circumstances that Mr. GALE did to unhinge the lighter from Mr. HALL's hands. Mayberry Depo., p. 48:6-17.

**2.      *Testimony of Former City of Weed Police Department Chief Martin Nicholas***

Mr. GALE was trying to deescalate the situation with Mr. HALL until Mr. GALE physically tried to take the lighter from Mr. HALL, which was a use of force. S. Wisman Decl., ¶ 7, Ex. E (hereinafter, "Nicholas Depo."), pp. 22:17-23:9. Former Chief Nicholas is not sure that using force in trying to take the lighter from Mr. HALL would be the technique other people would use. Nicholas

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

Depo., p. 23:5-15. At the time Mr. GALE attempted to take the lighter from Mr. HALL, Mr. GALE's best option was to instead communicate and continue having dialogue with Mr. HALL. Nicholas Depo., pp. 23:16-24:4.

When former Chief Nicholas reviewed the incident video, he did not see Mr. HALL move his thumb at all or spark the lighter. Nicholas Depo., p. 35:10-25. It does not make sense at all to former Chief Nicholas that in an effort to stop somebody from lighting themselves on fire, you shoot them with a Taser and light them on fire. Nicholas Depo., pp. 46:6-47:2. There was no probable cause to arrest Mr. HALL on the day of the incident. Nicholas Depo., p. 58:1-24. Former Chief Nicholas would not have deployed his Taser at the moment Mr. GALE did in this matter. Nicholas Depo., p. 24:5-8.

### 3.   Testimony of City of Weed Police Department Corporal Tim Green

Before the subject incident, City of Weed Police Department Corporal Tim Green responded to Mr. HALL's home when Mr. HALL was suicidal. Officers cleared the house, spoke with Mr. HALL on the telephone while he was in the house, and got Mr. HALL to exit the house, where they spoke for about an hour. S. Wisman Decl., ¶ 9, Ex. F (hereinafter, "Green Depo."), pp. 17:5-18:1.

### F.   Defendant John Gale's Claims and Contentions

Mr. GALE claims he is unsure if he ignited Mr. HALL with his Taser or whether Mr. HALL lit himself on fire. Gale Depo., pp. 11:21-13:3. Had Mr. GALE not Tased and ignited Mr. HALL, Mr. GALE claims he would have detained Mr. HALL and taken him to a hospital pursuant to Welfare and Institutions Code § 5150, yet he also claims he does not know if Mr. HALL was experiencing a mental health crisis on the day of the subject incident. Gale Depo., pp. 46:20-48:6, 97:8-10.

Mr. GALE claims Mr. HALL assaulted him by being covered in gasoline and clicking the lighter to ignite himself, yet he agrees that there is no evidence of Mr. HALL attempting to ignite the lighter at any time. Gale Depo., pp. 52:19-53:21, 131:15-132:9. Mr. GALE contends Mr. HALL lit himself on fire at the same time he pulled the trigger on his Taser, yet he never saw Mr. HALL ignite the lighter. Gale Depo., pp. 161:2-162:2. Mr. GALE does not know where the fire started on Mr. HALL's body. Gale Depo., pp. 141:18-142:3.

Mr. GALE told numerous people on scene that Mr. HALL lit himself on fire. Gale Depo., pp. 150:4-152:17; Video, at 0:06:33-0:13:07; Video Tran., pp. 15:14-18, 16:3-4, 21:2-5, 21:7-12, 25:11-17,

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

and 26:3-4. When Mr. GALE was out on the street telling everybody Mr. HALL lit himself on fire, he did not also include the fact that he simultaneously shot his Taser. Gale Depo., p. 162:3-9.

### III. ARGUMENT

#### A.     Plaintiff Paul J. Hall Can Sustain a Claim Under the Bane Act

Any person who under color of law deprives another of any rights, privileges, or immunities secured by the Constitution of the United States and laws is liable for damages to the injured party. 42 U.S.C. § 1983. Excessive force claims brought under 42 U.S.C. § 1983 are analyzed in the context of the Fourth Amendment's prohibition against unreasonable seizures. *Villanueva v. California,* 986 F.3d 1158, 1169 (9th Cir. 2021); *Graham v. Connor,* 490 U.S. 386, 394 (1989); see also *Tenn. v. Garner*, 471 U.S. 1, 7 (1985). The primary question becomes whether the use of force was objectively reasonable. *Villanueva*, 986 F.3d 1158 at 1169; *Graham*, 490 U.S. 386 at 397. This assessment is based on a number of factors, including the circumstances known to the officer at the time, the type and amount of force used, and the availability of alternative methods. *Graham*, 490 U.S. at 397; s*ee* Ninth Circuit Model Civil Jury Instruction 9.25.

The analysis of Mr. HALL's claims under Cal. Civ. Code § 52.1 (the "Bane Act") and negligence theories is largely similar to the analysis under 42 U.S.C. § 1983, focusing on the officer's reasonableness. A plaintiff establishes a Bane Act claim by showing the defendant interfered "by threat, intimidation, or coercion," with the plaintiff's rights. Cal. Civ. Code § 52.1(b) and (c). "[U]se of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1." *Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766, 799 (2017). However, the inquiry is identical to that of Mr. HALL's 42 U.S.C. § 1983 claim, as "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014); *see Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."). "The Bane Act (Civ. Code, § 52.1) is not limited to hate crimes, and plaintiffs are not required to show that a county or its officers had a discriminatory purpose in harassing them. Plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion." *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 969

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

(2013). An officer's tactical conduct and decisions in the moments prior to the incident is relevant to the analysis. *See Hayes v. County of San Diego*, 57 Cal.4th 622, 639 (2013).

Fourth Amendment claims of excessive force are analyzed under an objective reasonableness standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010); *Graham*, 550 U.S. at 388. To determine if a Fourth Amendment violation has occurred, the court must balance the extent of an intrusion on an individual's Fourth Amendment rights against the government's interests to determine whether an officer's conduct was objectively reasonable based on the totality of the circumstances. *Graham*, 490 U.S. at 396-97; *Price v. Sery*, 513 F.3d 962, 968 (9th Cir. 2008); *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003); *Espinosa*, 598 F.3d at 537.

The court's analysis involves three steps. First, it must assess the severity of an intrusion on an individual's Fourth Amendment rights by evaluating the amount and type of force inflicted. *Miller*, 340 F.3d at 964; *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003); *Espinosa*, 598 F.3d at 537. Second, it must evaluate the government's interests by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape. *Drummond*, 343 F.3d at 1056; *Graham*, 490 U.S. at 396; *Espinosa*, 598 F.3d at 537. Third, it must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Miller*, 340 F.3d at 964; *Espinosa*, 598 F.3d at 537. Ultimately, the court must balance the force that was used by the officers against the need for such force to determine whether the force used was "greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002); *Espinosa*, 598 F.3d at 537. "[T]he 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out." *Graham*, 490 U.S. at 395; *see Tenn. v. Garner*, 471 U. S. 1, 7-8 (1985). Importantly, the Ninth Circuit has often held that summary judgment should only be granted "sparingly" in police misconduct cases because such cases often turn on credibility determinations by a jury. *Drummond*, 343 F.3d at 1056; *Espinosa*, 598 F.3d at 537.

///

///

---

-10-

**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant City of Weed's Motion for Summary Judgment**

1

### 1. Defendant John Gale Used Force That Was Excessive Under the State and Federal Constitutions

2

3      Plaintiffs cite 193 material disputed facts in their Statement of Disputed Facts, which starkly

4   contrast with CITY's and Mr. GALE's portrayal of the incident and demonstrate that Mr. GALE's

5   actions and inactions during the incident were objectively unreasonable, especially his decision to Tase

6   Mr. HALL while he was doused in gasoline when other options were available to him. Plaintiffs'

7   expert, Scott DeFoe, has 23 opinions regarding the failures and unreasonable actions and inactions of

8   CITY and Mr. GALE. *See* PSDF, Nos. 147-168. Some of those opinions are discussed in Section

9   II(D)(1) of this Opposition. Plaintiffs' expert, Jason Fries, has also concluded through his thorough

10  video analysis and experiments that Mr. HALL was not the source of ignition, and that the most likely

11  cause of the fire that injured Mr. HALL was the Taser Mr. GALE fired upon Mr. HALL. *See* PSDF,

12  Nos. 169-185. Some of Mr. Fries's opinions are discussed in Section II(D)(2) of this Opposition. This

13  evidence, and more, shows Mr. GALE's actions and inactions were objectively unreasonable.

14      Furthermore, Mr. GALE's fellow officers are highly critical of his actions and inactions during

15  and before the incident, which is powerful evidence that Mr. GALE's use of force on Mr. HALL was

16  objectively unreasonable. Chief Mayberry believes Mr. GALE used the Taser inappropriately with

17  somebody who was flammable. Mayberry Depo., pp. 22:2-23:7. Chief Mayberry believes that Mr.

18  GALE placed himself in a dangerous position during the subject incident, that it was dangerous for him

19  to use a Taser with flammable materials on Mr. HALL, and that he was critical of Mr. GALE for that.

20  Mayberry Depo., p. 24:9-24. He also believes it was highly dangerous for Mr. GALE to enter the room

21  in which the subject incident occurred to begin with, and that he doesn't know if he would have done

22  that himself. Mayberry Depo., p. 56:13-24. Chief Mayberry testified that both Taser training documents

23  Mr. GALE received from the City of Weed Police Department emphasized to avoid using a Taser when

24  someone is doused with gasoline and when there are flammable materials in the area. Mayberry Depo.,

25  pp. 35:12-36:11. Chief Mayberry would not have used the Taser in the circumstances that Mr. GALE

26  did to unhinge the lighter from Mr. HALL's hands. Mayberry Depo., p. 48:6-17.

27      According to former Chief Nicholas, at the time Mr. GALE attempted to physically take the

28  lighter from Mr. HALL, his best option was to communicate and continue having dialogue with Mr.

-11-

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

HALL. Nicholas Depo., pp. 23:16-24:4. Mr. GALE unreasonably failed to do that. Former Chief Nicholas would not have deployed his Taser when Mr. GALE did in this matter. Nicholas Depo., p. 24:5-8. When he reviewed the body worn camera footage of the subject incident, former Chief Nicholas did not see Mr. HALL move his thumb at all or spark the lighter he was holding. Nicholas Depo., p. 35:10-25. He believes there was no probable cause to arrest Mr. HALL on the day of the subject incident. Nicholas Depo., p. 58:1-24. It does not make sense at all to former Chief Nicholas that in an effort to stop somebody from lighting themselves on fire, you shoot them with a Taser and light them on fire. Nicholas Depo., pp. 46:6-47:2. This evidence, and more, strongly supports Mr. HALL's argument that Mr. GALE's use of force was objectively unreasonable.

City of Weed Police Department Corporal Tim Green responded to Mr. HALL's residence in the past when Mr. HALL was suicidal. Back then, officers cleared the house, spoke with Mr. HALL on the telephone while he was in the house, and got Mr. HALL to come out of the house, where they spoke with him for about an hour. S. Wisman Decl., ¶ 9, Ex. G ("Green Depo."), pp. 17:5-18:1. The conduct of Corporal Green and fellow officers during that past incident with Mr. HALL is what Mr. GALE should have done in this incident, instead of his unreasonable actions and inactions including firing his Taser at Mr. HALL while he was doused with gasoline. Had Mr. GALE done as Corporal Green did in his past interaction with Mr. HALL, the subject incident could have been avoided. This is even more evidence that Mr. GALE's use of force was objectively unreasonable.

In addition to the preceding disputed material facts, which are more than enough on their own to support a denial of CITY's MSJ, the most powerful evidence of Mr. GALE's objectively unreasonable use of force in tasing Mr. HALL while he was soaked in gasoline is the body-worn camera video of the incident. Mr. GALE's and CITY's contentions that Mr. GALE could not escape the back room and had no choice but to fire his Taser at gasoline-soaked Mr. HALL, which are the driving arguments in CITY's MSJ, are without merit, and vehemently disputed. Prior to firing his Taser, Mr. GALE did not even attempt to exit the room through the door he had used to enter the room, through the door behind Mr. HALL, or through either of the two windows in the room. Gale Depo., pp. 93:1-94:18; Video, at 0:00:58-0:06:31. *While engulfed in flames*, Mr. HALL was able to easily open and exit through the door to the back room which Mr. GALE had jumped through to enter the back room. Video, at 0:06:40-42.

-12-

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

This is strong evidence that Mr. GALE was able to easily exit the back room at any time he chose, but that he unreasonably chose not to, instead remaining in the room continuously, objectively unreasonably, and recklessly escalating the situation into a physical altercation and ultimately, near-immolation of Mr. HALL. Further, Mr. HALL was complying with Mr. GALE's commands, had dropped both hands, including the one holding the lighter, and had both hands down, relaxed, and by his side, shortly before and at the moment Mr. GALE Tased him. Mr. GALE unreasonably Tased a compliant man and ignited him on fire. Video, at 0:06:05-32. All Mr. GALE had to do to avoid igniting and causing horrific, excruciating injuries to Mr. HALL was to simply not Tase him, and to instead continue engaging with him in the room or exit the room to continue engaging in a safer way.

Furthermore, Mr. GALE made numerous other unreasonable, inexplicable, and reckless decisions before unreasonably deciding to jump into the back room with Mr. HALL in the first place. He didn't bring his fire extinguisher, which was in his squad car, into Mr. HALL's home despite knowing the nature of the call he was responding to, and at no point did he ask for a fire extinguisher. Gale Depo., pp. 53:25-54:7, 96:5-7, 98:4-12, 98:24-99:9. He did not clear the house or adjacent buildings to ensure other people's safety before entering Mr. HALL's home. S. DeFoe Decl., ¶¶ 24-25 and 48; S. DeFoe Report; Video, at 0:00:00-0:06:33. He did not wait for backup or the fire department to arrive before entering Mr. HALL's home, and did not try to contact Mr. HALL by telephone or bullhorn to convince him to come outside to talk. S. DeFoe Decl., ¶¶ 24-25, 52, and 65; S. DeFoe Report; Video, at 0:00:00-0:06:33.

CITY cites *Ramirez v. Guadarrama*, 3 F.4th 129 (5th Cir. 2021) (*Ramirez I*), a nonbinding Fifth Circuit case with facts similar to but distinguishable from those in this case, that held that an officer's use of a Taser on a man who had just poured gasoline on himself was not unreasonable and that the officer was entitled to qualified immunity, reversing the district court's denial of the officer's MSJ. A petition for *en banc* review was denied by a vote of 13-4. A petition for writ of certiorari was denied 6-3 by the U.S. Supreme Court on June 30, 2022. Justice Sotomayor dissented, with Justices Breyer and Kagan joining. *Ramirez v. Guadarrama*, 142 S. Ct. 2571 (2022) (*Ramirez II*).

Justice Sotomayor's dissent from the denial of the petition for writ of certiorari to the United States Court of Appeals for the Fifth Circuit in *Ramirez II*, a portion of which is quoted below, illustrates the unjust and

-13-

**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant City of Weed's Motion for Summary Judgment**

unreasonable logic and result of *Ramirez I* and why the Fifth Circuit's rationale in granting qualified immunity was erroneous:

> "I would summarily reverse the Fifth Circuit's grant of qualified immunity at the motion-to-dismiss stage, a stage at which petitioners' well-pleaded allegations must be accepted as true. According to those allegations, the officers elected to use force knowing that it would directly cause the very outcome they claim to have sought to avoid. That is, to prevent Olivas from lighting himself on fire and burning down the house, the officers tased Olivas just after they were warned that it would light him on fire. This Court's precedent establishes that "the 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out." *Graham v. Connor*, 490 U. S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). See *Tennessee v. Garner*, 471 U. S. 1, 7-8, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). Using deadly force that does no more than knowingly effectuate the exact danger to be forestalled is clearly unreasonable under this standard." *Ramirez v. Guadarrama*, 142 S. Ct. 2571, 2572 (2022).

The facts of *Ramirez I* are distinguishable from those in this case. Here, Mr. HALL repeatedly told Mr. GALE to leave prior to being Tased. Video, at 0:00:42-0:05:08; Video Tran., pp. 2:8-10:13. This is evidence that Mr. HALL did not want to hurt Mr. GALE, which in turn is evidence that Mr. HALL was not imminently going to set himself on fire, in contrast to the decedent in *Ramirez I*. Unlike the decedent in *Ramirez I*, Mr. HALL had not threatened to burn down the house and kill six people. Since Mr. HALL was begging Mr. GALE to go, Mr. HALL clearly did not want to light himself on fire with Mr. GALE standing nearby. While Mr. HALL did make some threatening comments while Mr. GALE tried to take the lighter away from him, e.g., "I am going to light us both," this only started after Mr. GALE physically engaged him, yet Mr. HALL nonetheless continued to tell Mr. GALE to leave during their struggle. In *Ramirez I*, the decedent poured gas on himself after the officers entered the room and expressed much more threatening behavior that Mr. HALL did in this case.

It is unclear how long the incident lasted in *Ramirez I*, but it appears significantly briefer than this incident which lasted about 6 minutes from the time Mr. GALE arrived until the time Mr. GALE fired his Taser and ignited Mr. HALL. Video, at 0:00:00-0:06:33. The officers in *Ramirez I* were acting in a chaotic and fast-moving situation, and thus their actions were given more leeway. Here, Mr. GALE had over six minutes to either figure out a more effective plan or wait for backup. Video, at 0:00:00-0:06:33. Further, this lapse of time suggests a lack of imminence to any threat posed by Mr. HALL. In contrast to this case, the incident in *Ramirez I* unfolded in mere seconds, with the decedent pouring gas on himself, an officer spraying him with pepper spray shortly after entering the room, and then the other two officers tasing the decedent immediately after that. *Ramirez I*, 3 F.4th at 132. Further, unlike

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

in *Ramirez I*, where the officers did not know and had no prior interactions with the decedent, here Mr. GALE knew Mr. HALL before the incident and knew he never posed a danger to himself or others. Gale Depo., pp. 40:19-41:12, 43:24-44:11.

Furthermore, the Fifth Circuit's excessive force standard appears to be higher than the Ninth Circuit's, even if both apply the *Graham* factors. The Fifth Circuit requires the plaintiff to show that the use of force was "clearly excessive," and that the excessiveness was "clearly unreasonable." *Ramirez I*, F.4th at 134. No Ninth Circuit cases appear to frame the inquiry this way. The Fifth Circuit's test is thus a conflation of the two qualified immunity prongs and requires a right to be clearly established in order for it to be violated in the first place. The practical effect of this is that it limits the precedent available to civil rights plaintiffs when arguing that a right is clearly established. It is important to understand that this new test is the Firth Circuit's qualified immunity analysis, which is not the test or analysis used for a violation of the Bane Act or a violation of 42 U.S.C. § 1983. Lastly, it is important to remember that *Ramirez I* is a qualified immunity case that does not discuss the Bane Act, and that CITY's MSJ does not even reference the term "qualified immunity," let alone discuss it.

In this case, Mr. HALL was not a threat to others, only to himself. Lewin Depo., pp. 78:19:79:1, 83:22-84:7, 99:2-10, and 98:23-99:1; Hall Depo., pp. 136:18-137:12; Video, at 0:00:00-0:06:33. Plenty of cases around the country hold that use of deadly force against suicidal individuals who are only threats to themselves violates a clearly established right, including cases where the individual had a gun pointed to his head, and at least one involving a man who had a knife and threatened to "kill everybody." *See Stephens v. N.J. State Police (In re Gibbons)*, 969 F.3d 419, 436 (1st Cir. 2020), fn. 157 (McKee, J. dissenting from denial of rehearing en banc), for a list of such cases.

In *Gravelit-Blondin v. Shelton*, 728 F.3d 1086 (9th Cir. 2013), the police were called out to the home of an elderly, suicidal man named Jack. The officers were told that Jack owned a gun and likely had it with him. When they arrived, officers found Jack sitting in his car with a hose running from the exhaust pipe to one of the car's windows. After a struggle and Jack's refusal to show his hands, Jack was Tased twice. Around the same time, the plaintiff, who was Jack's neighbor, came outside to see what was going on and called out, "What are you doing to Jack?" from about 40 feet away. The officers yelled commands to the plaintiff, with one yelling, "Get back," and the other yelling, "Stop." The

-15-

**Plaintiffs' Memorandum of Points and Authorities in Opposition to**
**Defendant City of Weed's Motion for Summary Judgment**

plaintiff either froze or took a couple steps back and then stopped. An officer ran towards the plaintiff and warned him he would be Tased if he did not leave, but before he finished the warning, he Tased the plaintiff in dart mode. A witness testified that the plaintiff appeared frozen in fear before he was Tased and did not make any threatening movements. The court found excessive force and no qualified immunity. On the excessive force issue, the court concluded that "the intrusion on [Plaintiff]'s Fourth Amendment interests—the discharge of a Taser in dart mode upon him—involved an intermediate level of force with 'physiological effects, [] high levels of pain, and foreseeable risk of physical injury.'" *Gravelit-Blondin v. Shelton*, 728 F.3d at 1091 (quoting *Bryan v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010)). The court also found that each of the three primary factors from *Graham v. Connor* were in favor of the plaintiff, as the "crime" was not serious, and he was not resisting or presenting a threat. Just as in *Gravelit-Blondin v. Shelton*, Mr. HALL was not resisting or presenting a threat because both of Mr. HALL's hands were relaxed, down, and by his side prior to and at the moment Mr. GALE fired his Taser at Mr. HALL. Video, at 0:06:05-32.

Under the clearly established analysis, the *Gravelit-Blondin v. Shelton* court found that "[t]he right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008." *Id*. at 1093. The court also relied on cases involving "passive resistance" but without Tasers, and noted several cases from other circuits where use of a Taser constituted excessive force. The court then assessed "whether it was clear in 2008 that using a Taser in dart mode was *non-trivial*." *Id*. at 1095 (emphasis in original). Since Ninth Circuit precedent was lacking, the court looked at other circuits and district courts and found several cases where use of a Taser was found to be excessive, and thus non-trivial. *Id*. at 1094-96.

In *Espinosa v. City & County of San Francisco*, 598 F.3d 528 (9th Cir. 2010), officers entered an apartment where the decedent was staying and searched it. They found a bloody shirt and detained one person. They found the decedent in the attic. When the decedent did not follow orders to put his hands up, officers fatally shot him. On appeal, the court held defendants were properly denied summary judgment on the ground of qualified immunity because fact issues remained concerning whether the officers violated the Fourth Amendment. Specifically, fact issues remained concerning, among other things: whether the officer who first entered had an objectively reasonable belief that a life-threatening

**Plaintiffs' Memorandum of Points and Authorities in Opposition to
Defendant City of Weed's Motion for Summary Judgment**

emergency or an exigency was occurring; whether the officer's use of deadly force was reasonable, given that the decedent was surrounded, not brandishing a weapon, and in fact unarmed; and whether the officers intentionally or recklessly provoked a violent confrontation. The same or similar factual issues are present in this case: whether a lift-threatening emergency or exigency was occurring, in light of Mr. HALL not igniting himself over the span of 6 minutes; whether Mr. GALE's use of potentially deadly force was reasonable, given that Mr. HALL had not lit himself on fire over the course of their 6-minute-long encounter, and had complied with Mr. GALE's commands by relaxing and dropping his hands to his side just before Mr. GALE Tased Mr. HALL; and whether Mr. GALE intentionally or recklessly provoked a violent confrontation, which is what Plaintiffs allege. Accordingly, CITY's MSJ should be denied.

### 2. *Plaintiff's Bane Act Claim Does Not Implicate the Eighth Amendment or Substantive Due Process Under the Fourteenth Amendment*

Plaintiffs do not oppose Section III(A)(2) of CITY's Memorandum of Points and Authorities in Support of its MSJ, in which CITY argues that Mr. HALL's Bane Act claim does not implicate the Eighth Amendment and substantive due process under the Fourteenth Amendment.

### 3. *Plaintiff Can Prove the Required Mental State for a Bane Act Claim*

It bears repeating that, "[U]se of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1, subdivision (a)." Cornell v. City & County of San Francisco, *supra*, 17 Cal.App.5th at 799 (2017). It also bears repeating that "The Bane Act (Civ. Code, § 52.1) is not limited to hate crimes, and plaintiffs are not required to show that a county or its officers had a discriminatory purpose in harassing them. Plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion." *Bender*, 217 Cal.App.4th at 969. Notwithstanding the foregoing authority, for the same reasons discussed in Section III(A)(1) of this Opposition, *supra*, Mr. HALL can and does prove any required mental state of Mr. GALE for a Bane Act Claim.

Furthermore, ample disputed material facts exist which show Mr. GALE had specific intent to violate Mr. HALL's civil rights. Mr. HALL recalls hearing the words, "Taser, Taser, Taser," Mr. GALE smiling at him, and being Tased. Hall Depo., pp. 152:25-154:1. Mr. GALE smiling at Mr.

Plaintiffs' Memorandum of Points and Authorities in Opposition to
Defendant City of Weed's Motion for Summary Judgment

HALL at the moment he Tased him and set him on fire is disturbing evidence of his specific intent to violate Mr. HALL's civil rights. So is his decision to Tase Mr. HALL after Mr. HALL complied with his commands, knowing Mr. HALL might die as a result. So shocking was Mr. GALE's demeanor, intent, emotional state, and callous disregard for Mr. HALL's civil rights in firing his Taser at Mr. HALL, that the first thoughts Mr. HALL had upon waking up from his coma following the incident were nightmares of Mr. GALE smiling at him. Hall Depo., pp. 153:24-154:9. Mr. GALE's specific intent to deprive Mr. HALL of his civil rights is also exhibited by the many statements he made after firing his Taser and setting Mr. HALL on fire, that it was Mr. HALL who set himself on fire. This is further evidence of Mr. GALE's culpable state of mind, his specific intent to violate Mr. HALL's civil rights, and his attempts to cover up what he did by falsely accusing Mr. HALL of having lit himself on fire, despite all eyewitness accounts of the event to the contrary. Lewin Depo., pp. 120:3-7, 121:15-122:7, and 122:14-19; Gale Depo., pp. 159:14-21, 159:22-161:1, 163:18-24, 166:23-168:9, and 167:22-168:2; Video, at 0:07:40-45, 0:07:55-59, 0:08:59-0:09:01, 0:09:04-09, 0:09:19-20, 0:10:08-10, 0:10:13-20, 0:12:27-33, 0:13:02-08, and 0:13:53-58; Video Tran., pp. 15:14-18, 16:3-4, 18:19-23, 19:2-3, 19:8-9, 21:2-5, 21:7-12, 25:11-17, 26:3-4, and 26:19-23.

### B. Plaintiffs Can Sustain a Claim Predicated on Negligence

Except when otherwise provided by law, public employees in California are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons. Cal. Gov. Code § 820. Public entities are also generally liable for injuries caused by the negligence of their employees acting in the course and scope of their employment. Cal. Gov. Code § 815.2. Under Cal. Gov. Code §§ 815.2 and 820, the law of negligence governs Mr. HALL's negligence claim.

In *Hayes v. County of San Diego*, 57 Cal.4th 622 (2013), the United States Court of Appeals for the Ninth Circuit asked the California Supreme Court to decide a matter of state law: whether under California negligence law, sheriff's deputies owe a duty of reasonable care to a suicidal person when preparing, approaching, and performing a welfare check on the person. *Id.* at 626. The California Supreme Court's response to the Ninth Circuit's question was that, "under California negligence law, liability can arise from tactical conduct and decisions employed by law enforcement preceding the use

**Plaintiffs' Memorandum of Points and Authorities in Opposition to
Defendant City of Weed's Motion for Summary Judgment**

of deadly force." *Id*. at 631. The California Supreme Court concluded that liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable. *Id*. at 626. Further, the reasonableness of the deputies' preshooting conduct was not to be considered in isolation, but rather, as part of the totality of circumstances surrounding the fatal shooting of the plaintiff's father. *Id*. at 632. The court emphasized that summary judgment is only appropriate when the trial court determines that, viewing the facts most favorably to the plaintiff, no reasonable juror could find negligence. *Ibid*. (citing *Hernandez v. City of Pomona*, 46 Cal.4th 501, 521 (2009)). Here, many triable issues of material fact exist such that reasonable jurors could find negligence by Mr. GALE and by extension his employer, CITY, for his use of potentially deadly force.

In the related case of *Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013), the court found that the decedent was complying with the deputy's order when he raised a knife and posed no clear threat at the time he was shot without warning, and on that basis, the court reversed the district court's first conclusion that the deputies' use of force was objectively reasonable as a matter of law. The court found that reasonable jurors could conclude that the deputies' use of deadly force was not objectively reasonable, and that under California law, the deputies' duty to act reasonably when using deadly force extends to their pre-shooting conduct. *Hayes*, 736 F.3d at 1232-1237. In this case, Mr. GALE warned Mr. HALL to drop the lighter or that he would be Tased, so Mr. HALL complied with Mr. GALE's commands and had dropped both hands, including the one holding the lighter, and had both hands down, relaxed, and by his side, in the moment just before Mr. GALE Tased Mr. HALL. Mr. GALE nonetheless ignored Mr. HALL's compliance and shot him with the Taser anyway. Video, at 0:06:05-32. Mr. GALE's conduct in ignoring Mr. HALL's compliance has the same effect as if he had given no warning to Mr. HALL at all, which is certainly unreasonable. Mr. GALE's use of potentially deadly force in this incident was unreasonable, and Mr. GALE was negligent at minimum. Additionally, for the same reasons discussed in Section III(A)(1) of this Opposition, Mr. HALL can and does sustain a claim predicated on negligence.

///

///

**Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant City of Weed's Motion for Summary Judgment**

### C.    Plaintiff Jeannette Lewin Can Sustain a Claim for Loss of Consortium

Ms. LEWIN's cause of action for loss of consortium derives from Mr. HALL's causes of action. The same genuine disputes as to material facts with respect to Mr. HALL's fourth and fifth causes of action exist with respect to Ms. LEWIN's loss of consortium claim. CITY is therefore not entitled to judgment as a matter of law, and its MSJ should be denied.

## IV. CONCLUSION

CITY argues that Mr. HALL's fourth and fifth causes of action in this case lack merit because Mr. GALE's use of a Taser on Mr. HALL while he was doused in gasoline was reasonable and that Mr. GALE had no other options available to him. Plaintiffs cite 193 material disputed facts that demonstrate the opposite of CITY's contention: that Mr. GALE Tasing Mr. HALL while he was doused in gasoline was potentially and nearly deadly, objectively unreasonable, negligent, reckless, and done with callous disregard of Mr. HALL's rights. Those same facts further demonstrate that Mr. GALE was objectively unreasonable, negligent, and reckless by failing to take advantage of other, more reasonable options available to him, both before and after entering Mr. HALL's home on the day of the incident. Neither Chief Mayberry, former Chief Nicholas, nor Plaintiff's expert, Scott DeFoe, would have fired a Taser at Mr. HALL as Mr. GALE did in this incident. The Court has sufficient grounds to deny CITY's MSJ based on the following disputed fact alone: that Mr. GALE used inappropriate and unreasonable and potentially deadly force when he deployed his Taser X7 Conducted Energy Device (CED), causing Mr. HALL to burst into flames and ultimately causing Great Bodily Injury. *See* PSDF, No. 158. Plaintiffs could not agree more with former Chief Nicholas's testimony that, *in an effort to stop somebody from lighting themselves on fire, it does not make sense at all that you shoot them with a Taser and set them on fire*. Genuine disputes as to material facts exist in this case, and CITY is not entitled to judgment as a matter of law. Accordingly, Plaintiffs respectfully request that CITY's MSJ be denied.

DATED: November 15, 2023         **DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**

By:  ___*/s/ Sean D. Wisman*_____
        JOSEPH J. BABICH
        SEAN D. WISMAN

        *Attorneys for Plaintiffs PAUL J. HALL and
        JEANNETTE LEWIN*

**Plaintiffs' Memorandum of Points and Authorities in Opposition to
Defendant City of Weed's Motion for Summary Judgment**