1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   PAUL J. HALL and JEANNETTE HALL,          No. 2:20-cv-01789-TLN-DMC

12                   Plaintiffs,

13          v.                                  **ORDER**

14   CITY OF WEED, JOHN GALE, and
     DOES 1 through 10, inclusive.
15

16                   Defendants.

17

18          This matter is before the Court on Defendant City of Weed's ("Defendant City") Motion

     for Summary Judgment.  (ECF No. 38.)  Also before the Court is Defendant John Gale's
19
     ("Defendant Gale") Motion for Partial Summary Judgment.  (ECF No. 40.)  Both motions are
20
     fully briefed.  (ECF Nos. 44, 45, 52, 51.)  For the reasons set forth below, the Court DENIES
21
     Defendant City's motion.  The Court GRANTS in part and DENIES in part Defendant Gale's
22
     motion.
23
     ///
24
     ///
25
     ///
26
     ///
27
     ///
28
                                              1

1        **I.      FACTUAL AND PROCEDURAL BACKGROUND**[1]

2        In October of 2019, Plaintiff Paul J. Hall ("Plaintiff Hall") was residing at 180 Main Street

3   in the City of Weed along with his wife, Plaintiff Jeannette Lewin ("Plaintiff Lewin")

4   (collectively with Plaintiff Hall, "Plaintiffs").  (ECF No. 44–1 at 2.)  The building is an older

5   three-story building that has both concrete and wooden walls.  (*Id*.)  The front of the building is

6   concrete block, and the back is made of wood.  (*Id*.)  On the morning of October 12, 2019,

7   Plaintiff Hall tried talking to his family, but they did not want to talk to him because they were

8   fed up with him.  (*Id*. at 5.)  Plaintiff Hall testified in deposition that he was hurt and depressed,

9   feeling like his family had turned their backs on him.  (*Id*.)  Plaintiff Hall further testified that he

10  was desperate, poured gasoline on himself, and threatened to light himself on fire if his family did

11  not talk to him.  (*Id*.)  When he did this, Plaintiff Hall was on the middle floor, inside of the

12  residence at 180 Main Street.  (*Id*.)

13       On the morning of October 12, 2019, Defendant Gale was on duty, working as a

14  uniformed patrol officer with Defendant City.  (*Id*. at 6.)  Defendant Gale was dispatched to 180

15  Main Street after he was informed Plaintiff Hall was threatening to commit suicide and had

16  covered himself with a flammable liquid.  (*Id*. at 6.)  Defendant Gale's body camera footage

17  shows, once Defendant Gale arrived at the residence, he rushed into the front room and then into

18  a back room with several paint cans and wood molding on the floor.  (*Id*. at 7–8.)

19       Once in the back room, Defendant Gale told Plaintiff Hall, "[l]ook I can't go anywhere,"

20  and Plaintiff Hall responded, "[i]t's not safe for you here."  (*Id*. at 9–10.)  When Defendant Gale

21  asked Plaintiff Hall why it was not safe, Plaintiff Hall responded, "[b]ecause I'm ready to go,"

22  "I'm covered with everything you could ever do to [inaudible]" and "I'm leaving . . . leaving this

23  place."  (*Id*.)  As Defendant Gale talked to Plaintiff Hall, Defendant Gale could see Plaintiff Hall

24  holding a lighter and could smell gasoline.  (*Id*. at 10.)  Defendant Gale and Plaintiff Hall

25  engaged in further conversation for some time.  (*Id*. at 10–11.)

26  ///

27  ───────────────

28  [1]      The relevant facts that follow are undisputed unless otherwise noted and are derived from the undisputed facts as stated by Defendant City and responded to by Plaintiff.  (ECF No. 44-1.)

At some point thereafter, Defendant Gale attempted to wrestle the lighter away from Plaintiff Hall and a struggle ensued between the two, though the specific actions of Plaintiff Hall and Defendant Gale during the struggle are disputed.  (*Id*. at 14–20.)  Plaintiff Hall eventually broke free of Defendant Gale's attempts to control the lighter and stated, "I'm going to do it. I swear to f—ing God."  (*Id*. at 21.)  Defendant Gale again tried to reach for the lighter, and Plaintiff Hall resisted, saying, "I still flick it when you—when you stun me.  I will."  (*Id*.)  Plaintiff Hall again broke free, saying over and over again "only death will stop me."  (*Id*.)  Plaintiff Hall then said "are you going to kill me then I'm going up," and a moment later, he said, "you're going to kill me or — or I'm going up."  (*Id*.)

The body camera footage then shows Defendant Gale aimed his taser at Plaintiff Hall, while repeating "put it down" several times.  (*Id*. at 23.)  Defendant Gale stated, "on the count of three."  (*Id*.)  Plaintiff Hall then leaned against a wall, holding the lighter tightly to his chest, and Defendant Gale called over his radio "Weed PD 449, he has the lighter up to himself.  He's going to light it."  (*Id*.)  Defendant Gale then finished counting to three and commanded, one more time, "drop the lighter.  Put it down."  (*Id*.)  From the time he encountered Plaintiff Hall, Defendant Gale instructed Plaintiff Hall to drop the lighter more than 50 times.  (*Id*. at 25.)  Defendant Gale then shot the taser striking Plaintiff Hall.  (*Id*. at 24.)  The taser is heard discharging for approximately one second when flames erupt on Plaintiff Hall.  (*Id*.)

Plaintiffs brought this action on September 4, 2020, asserting various 42 U.S.C. § 1983 ("§ 1983") and state claims related to the incident.  (ECF No. 1.)  Defendant City filed its motion for summary judgment on November 1, 2023.  (ECF No. 38.)  Defendant Gale filed his motion for partial summary judgment on November 6, 2023.  (ECF No. 40.)

## II.    STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings,

depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of its contention that a dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed.

4

R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

### III.   ANALYSIS

Defendant Gale moves for summary judgment on Plaintiff Hall's claims for excessive force in violation of the Fourth and Fourteenth Amendments, deprivation of rights in violation of the Eighth and Fourteenth Amendments, violation of substantive due process, violation of the Bane Act, assault, and battery.  (ECF No. 40.)  Defendant City moves for summary judgment as to Plaintiff Hall's claims for violation of the Bane Act and negligence[2].  (ECF No. 38.)  The Court will address each claim in turn.

As a preliminary matter, Plaintiffs argue, citing to the Court's Initial Pretrial Scheduling Order, Defendant Gale's motion for summary judgment should be rejected or denied as it was filed after Defendant City's motion for summary judgment and without leave of the Court.  (ECF No. 45 at 7.)  Plaintiffs misconstrue the Court's Initial Pretrial Scheduling Order as requiring a party to seek leave of the Court to file a motion for summary judgment after another party has

---

[2]    Plaintiff Lewin brings a claim for loss of consortium against Defendant Gale and Defendant City.  (ECF No. 13.)  Plaintiff Lewin's claim for loss of consortium is not discussed substantively by either Defendant and is only mentioned by Defendant City, seemingly as an afterthought, in the conclusion paragraph of Defendant City's Reply.  (ECF No. 52.)  As it is not clear to the Court if Defendants are moving for summary judgment as to Plaintiff Lewin's loss of consortium claim, the Court declines to rule on the motion as to this claim at this time.

done so.  Pursuant to the Initial Pretrial Scheduling Order, "absent leave of the Court, all issues the parties wish to resolve on summary judgment must be raised together in one (1) motion or cross-motion. Should the parties wish to file additional motions for summary judgment, they must seek leave of the Court."  (ECF No. 4.)  Thus, the scheduling order only requires a party to seek leave of the Court prior to filing a motion for summary judgment if that party has previously filed one.

Since Defendant Gale had not previously filed a motion for summary judgment as to Plaintiff's claims, he was not required to seek leave of the Court prior to filing the instant motion. Accordingly, the Court will consider Defendant Gale's motion for summary judgment on its merits.

A.      42 U.S.C. § 1983 Claims

Section 1983 provides that "[e]very person who, under color of any [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]"  42 U.S.C. § 1983.

Plaintiff Hall asserts three distinct § 1983 claims against Defendant Gale: excessive force in violation of the Fourth Amendment and Fourteenth Amendments (Claim One); deprivation of rights in violation of the Eighth and Fourteenth Amendments (Claim Two); and violation of substantive due process rights under the Fourteenth Amendment (Claim Three).  (ECF No. 13.) Defendant Gale moves for summary judgment as to all of Plaintiff Hall's § 1983 claims.  (ECF No. 40 at 3.)  Plaintiff Hall does not oppose Defendant Gale's motion for summary judgment with respect to Plaintiff Hall's claims under the Eighth and Fourteenth Amendments.  (ECF No. 45 at 8.)  Therefore, the Court will only address Plaintiff Hall's claim of excessive force in violation of the Fourth Amendment against Defendant Gale.

i.      *Fourth Amendment Excessive Force Claim (Claim One)*

a.      *Violation of a Constitutional Right*

Plaintiff Hall contends that Defendant Gale used excessive force when Defendant Gale shot Plaintiff Hall with a taser gun while he was covered in flammable substance.  (ECF No. 13 at

6

3).  Defendant Gale argues the Court should grant summary judgment as to Plaintiff Hall's excessive force claim because Defendant Gale's use of force was objectively reasonable as a matter of law.  (ECF No. 40 at 5–9.)  In opposition, Plaintiff Hall argues there are genuine issues of material fact as to whether Defendant Gale used excessive force.  (ECF No. 45 at 8–13.)

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth Amendment permits officers making an arrest to use force, but only an amount that is objectively reasonable in light of the circumstances.  *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).  In determining whether Defendant Gale's actions were objectively reasonable, the Court "must balance the nature of the intrusion upon an individual's rights against the countervailing government interests at stake, without regard for the officers' underlying intent or motivations."  *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019), *cert. denied sub nom. Browder v. Nehad*, 141 S. Ct. 235 (2020) (citing *Graham*, 490 U.S. 386, 396–97 (1989)).  "Whether a use of force was reasonable will depend on the facts of the particular case, including, but not limited to, whether the suspect posed an immediate threat to anyone, whether the suspect resisted or attempted to evade arrest, and the severity of the crime at issue."  *Id.*  "The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety."  *Id.* (citing *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc)).

Reasonableness of force is usually a fact question for the jury.  *A.G.1 by & through Uribe v. City of Fresno*, No. 1:16-CV-01914-LJO-SAB, 2018 WL 4042906, at *4 (E.D. Cal. Aug. 22, 2018) (citing *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997)).  "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."  *Id.* (quoting *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012)).

In the instant case, Defendant Gale argues his actions were objectively reasonable based on the following evidence: Defendant Gale responded to a call about a man who wanted to kill himself; Plaintiff Hall had doused himself in flammable liquids and told family members he was

1   going to light himself on fire; Plaintiff Hall possessed a lighter; Plaintiff Hall refused Defendant

2   Gale's efforts to talk Plaintiff Hall into putting the lighter down; Plaintiff Hall fought off

3   Defendant Gale's physical attempts to remove the lighter from Plaintiff Hall; Defendant Gale

4   observed Plaintiff Hall drop his hand with the lighter to his side and appear to be flicking the

5   lighter to start; and others were in the immediate vicinity.  (ECF No. 40 at 6–9.)  Based on this

6   evidence, Defendant Gale argues he reasonably believed Plaintiff Hall was an immediate threat

7   and used reasonable force to protect himself from that perceived threat.  (*Id*.)

8           The Court agrees with Defendant Gale that the conduct in the instant case is conduct that

9   *may* justify the use of intermediate force.  *Bryan* v. *MacPherson*, 630 F.3d 805, 826 (9th Cir.

10   2010) (Tasers constitute an "intermediate or medium, though not insignificant, quantum of

11   force.");  *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (An

12   officer's use of a taser to subdue a suspect was reasonable even when the suspect had not

13   threatened the officer, committed a serious crime, or appeared to have a weapon.).  "The question

14   on summary judgment, however, is not whether some version of the facts supports [Defendant

15   Gale's] position, but rather whether a trier of fact, viewing the evidence in the light most

16   favorable to [Plaintiff Hall], *could* find in [Plaintiff's] favor."  *S.R. Nehad*, 929 F.3d at 1133

17   (emphasis added).  For the reasons set forth below, the Court finds a reasonable jury *could*

18   conclude that Plaintiff Hall did not pose an immediate threat to anyone's safety that warranted the

19   use of intermediate force.

20           First, Defendant Gale's repeated assertion that Plaintiff Hall "appeared to be flicking the

21   lighter to start" at the time Defendant Gale shot his taser is disputed by Plaintiff and arguably

22   contradicted by the body camera footage.  (*See, e.g.*, ECF No. 40 at 7); *Vos v. City of Newport

23   Beach*, No. 16-56791, 892 F.3d 1024, 1028 (9th Cir. 2018) ("[V]ideo footage of the incident does

24   not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that

25   footage.").  Plaintiff Hall alleges he never intended on lighting himself on fire and he did not

26   attempt to flick his lighter because he knew that flicking it and testing it would light himself on

27   fire.  (ECF No. 45 at 2.)  Plaintiff Hall submits a declaration from his expert, Jason Frias, CEO of

28   3D Forensic, Inc., who has been trained in the fields of forensic animation, forensic laser

scanning, forensic video analysis, laser-based photogrammetry, and scientific method. (ECF No. 45-6 at 1–2.) Mr. Frias opines Plaintiff Hall's thumb was on the side of the lighter while Plaintiff Hall held it, and at no point in the body camera footage did Plaintiff Hall's thumb leave the side the lighter. (*Id*. at 5.) Plaintiff Hall argues, to ignite the lighter, he would have needed to move his thumb from the side of the lighter to the top of the striking wheel, then rotate the striking wheel as his thumb came to rest on the gas trigger. (*Id*.) Upon review of the body camera footage, it is not undisputedly apparent to the Court that Plaintiff Hall appeared to be flicking the lighter to start. Thus, a reasonable jury could conclude, during his interactions with Defendant Gale, Plaintiff Hall did not attempt to ignite the lighter such that he posed an immediate threat that warranted intermediate force.

Second, Plaintiff Hall alleges he complied with Defendant Gale's commands to put down the lighter by moving his hands down by his side, including the one holding the lighter. (ECF No. 45 at 10–11.) The body camera footage confirms, shortly before Defendant Gale tased Plaintiff Hall, Plaintiff Hall had dropped both hands, including the one holding the lighter. (Hall Video at 0:006:30–32.) The body camera footage also shows Defendant Gale shot Plaintiff Hall with the taser *after* Plaintiff Hall had dropped both of his hands. (*Id.* at 0:006:30–32.) A reasonable jury could conclude any threat related to the lighter dissipated the moment Plaintiff Hall put his hands down.

Third, there is at least a reasonable inference that Defendant Gale did not believe that Plaintiff Hall posed an immediate threat to anyone. When Defendant Gale was dispatched to Plaintiff Hall's residence, he was informed that Plaintiff Hall had doused himself with gasoline and was going to light himself on fire. (ECF No. 45-1 at 8.) Defendant Gale testified he had a fire extinguisher in his squad car when he arrived at the scene of the subject incident. (ECF No. 45–2 at 7.) Plaintiff Hall alleges that Defendant Gale, however, did not bring the fire extinguisher with him to the scene of the subject incident. (*Id.*) Plaintiff Hall argues that Defendant Gale's failure to do so is indicative of his belief that Plaintiff Hall did not pose an immediate threat to anyone. (ECF No. 45 at 9.) Plaintiff Hall argues, as further indication, Defendant Gale did not clear the scene of the subject incident of other people or wait for back up or the fire department

1   before entering the scene of the subject incident.  (ECF No. 45 at 9–10.)  Finally, Plaintiff Hall

2   argues Defendant knew that Plaintiff's statements were empty threats because during the course

3   of their six-minute encounter, Plaintiff Hall never attempted to ignite his lighter.  (ECF No. 45 at

4   10.)  For all these reasons, a reasonable jury could find that it was apparent to Defendant Gale

5   that Plaintiff Hall was not a threat when Defendant Gale dispatched his taser.

6          Based on the existing record, the Court "cannot say that a verdict in favor of [Defendant

7   Gale] on the claim for excessive force is the only conclusion that a reasonable jury could reach."

8   *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (2014).  As a reasonable jury could conclude

9   Plaintiff Hall did not attempt or have any intention to ignite the lighter, any threat by Plaintiff

10   Hall dissipated when he put his hands down in response to Defendant Gale's command, or that it

11   was apparent to Defendant Gale that Plaintiff Hall was not a threat, a triable issue as to whether

12   Plaintiff Hall posed an immediate threat to anyone's safety that warranted the use of intermediate

13   force exists.  The Court is not persuaded that the other *Graham* factors, which may favor

14   Defendant Gale, outweigh the value of the immediate threat factor.  For these reasons, summary

15   judgment is not appropriate on the issue of whether there was a constitutional violation.

16                            *b.     Qualified Immunity*

17          Defendant Gale argues that even if the Court concludes summary judgment regarding his

18   use of force against Plaintiff Hall is inappropriate at this juncture, he is entitled to qualified

19   immunity because it was not clearly established that his use of intermediate force under these

20   particular circumstances was unlawful at the time of the incident. (ECF No. 40 at 13.)

21          Qualified immunity shields officials from civil liability where a reasonable officer would

22   not have known that his conduct violated a clearly established right.  *Anderson v. Creighton*, 483

23   U.S. 635, 638–39 (1987).  It "gives ample room for mistaken judgments by protecting all but the

24   plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224,

25   229 (1991).  An officer may be denied qualified immunity at summary judgment in a § 1983 suit

26   only if (1) the facts alleged, viewed most favorably to plaintiff, show the officer used excessive

27   force in violation of the Fourth Amendment, and (2) the right was clearly established so a

28   reasonable officer would have known his conduct to be unlawful.  *Morales v. Fry*, 873 F.3d 817,

1  821 (9th Cir. 2017).  "[C]ourts must not 'define clearly established law at a high level of

2  generality, since doing so avoids the crucial question whether the official acted reasonably in the

3  particular circumstances that he or she faced.'" *Id.* at 590 (quoting *Plumhoff v. Rickard*, 572 U.S.

4  765, 779 (2014)).  "While there does not have to be 'a case directly on point,' existing precedent

5  must place the lawfulness of the [conduct] 'beyond debate.'"  *Id.* (quoting *Ashcroft v. al-Kidd*,

6  563 U.S. 731, 741 (2011)).

7            Defendant Gale argues whether a right was clearly established must be determined in light

8  of the specific facts of this case (*i.e.*, an officer who used a taser on an individual who doused

9  himself with gasoline, was holding a lighter, was threatening to activate the lighter and after the

10  individual refused verbal efforts to drop the light and on whom physical efforts failed to disarm

11  the lighter.).  (ECF No. 40 at 14.)  To support his assertion that on these facts the right to be free

12  from intermediate force is not clearly established, Defendant Gale cites to a nonbinding, Fifth

13  Circuit case, *Ramirez v. Guadarrama*, 3 F.4th 129, 136 (5th Cir. 2021), which was issued after

14  the subject incident.  In *Ramirez*, officers responded to a call regarding a man who was

15  threatening to kill himself and burn down their house.  *Id.* at 132.  Once on the scene, the officers

16  found the suspect, leaning against a wall and holding a red gas can.  *Id.*  One of the officers then

17  discharged pepper spray in the suspect's face, temporarily blinding him.  *Id.*  The officers,

18  noticing the suspect had a lighter, then discharged tasers at the suspect, causing him and the house

19  to burst in flames.  *Id.*  In *Ramirez*, the Fifth Circuit found that, given "the immediate potential for

20  the destruction of lives and property, the force used — firing tasers — was not unreasonable or

21  excessive, and consequently . . . the officers did not violate the Fourth Amendment and are thus

22  entitled to qualified immunity."  *Id.* at 137.  Defendant Gale argues, given the lack of Ninth

23  Circuit or Supreme Court cases on arson-related situations in which a taser was used, *Ramirez*

24  should persuade the Court to grant qualified immunity, finding no constitutional violation.  (ECF

25  No. 40 at 14–17.)

26            However, the Court agrees with Plaintiffs the facts of *Ramirez* are distinguishable from

27  the instant case.  First, unlike in *Ramirez*, Plaintiff Hall had not threatened to burn down the

28  residence and kill others who were inside of the residence.  (ECF No. 45 at 15.)  Second, while

1    the events in *Ramirez* appear to have occurred rapidly, the interaction between Plaintiff Hall and

2    Defendant Gale lasted over six minutes, which Plaintiffs argue suggests a lack of imminence to

3    any threat posed by Plaintiff Hall.  *Id.*  Finally, in *Ramirez*, there was an immediate potential for

4    the destruction of lives and property.  3 F.4th 129 at 137.  In contrast, immediately before and at

5    the time Defendant Gale shot Plaintiff Hall with his taser, Plaintiff Hall had arguably complied

6    with Defendant Gale's orders and put down his hands such that there was not an immediate

7    potential for harm.  (ECF No. 45 at 10–11.)

8         Further, the Court finds there is a triable issue of material fact as to whether Plaintiff

9    Hall's right to safety was clearly established at the time of the violation.  Officials are charged

10   with knowing the laws governing their conduct.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19

11   (1982).  The Supreme Court rejects the proposition a constitutional right is only clearly

12   established when prior cases have addressed facts "materially similar" to those in the case at

13   issue.  *Hope v. Peltzer*, 536 U.S. 730, 739 (2002); *D.C. v. Wesby*, 583 U.S. 48, 64 (2018)

14   ("[T]here can be the rare obvious case, where the unlawfulness of the officer's conduct is

15   sufficiently clear even though existing precedent does not address similar circumstances.").

16        Defendant Gale contends he is entitled to qualified immunity because "every reasonable

17   officer would not have known that deploying a Taser here would be excessive force."  (ECF No.

18   40 at 17.)  However, the Court finds reasonable minds could differ as to whether Defendant Gale

19   ignored a known or obvious risk of substantial harm to Plaintiff Hall's health and safety. When

20   Defendant Gale shot his taser against Plaintiff Hall, Plaintiff Hall was soaked with gasoline.

21   (ECF No. 45 at 18.)  The instructions for the use of a taser warn that it can ignite flammable

22   clothing or materials, liquids, fumes or vapors such that the taser should not be used "in the

23   presence of any explosive or flammable substance unless the situation justifies the increased

24   risk." (ECF 44-1 at 25.)  Plaintiff argues Defendant Gale knew, at the time he pulled the trigger

25   on his taser, there was a risk of Plaintiff Hall igniting and Plaintiff Hall could have died as a

26   result. (ECF No. 45 at 18.)  Thus, a jury could conclude Defendant Gale ignored a known or

27   obvious risk by electing to use a force on Plaintiff Hall which he knew would result in the very

28   outcome he sought to purportedly avoid.  Accordingly, Defendant Gale is not entitled to qualified

12

1   immunity at this stage.

2         In sum, the Court DENIES Defendant Gale's motion for summary judgment as to Plaintiff

3   Hall's claim of excessive force in violation of the Fourth Amendment.

4                     B.    <u>State Law Claims</u>

5         Plaintiffs also bring five state law claims: (1) violation of the Bane Act (Claim Four); (2)

6   negligence (Claim Five); (3) assault (Claim Six); (4) battery (Claim Seven); and (5) loss of

7   consortium (Claim Eight).  (ECF No. 13.)  Defendant Gale moves for summary judgment on

8   Plaintiff Hall's claims for violation of the Bane Act, assault, and battery.  (ECF No. 40.)

9   Defendant City moves for summary judgment as to Plaintiff Hall's claims for violation of the

10  Bane Act and negligence.  (ECF No. 38.)  The Court will address each claim in turn.

11                    i.    *Bane Act (Claim Four)*

12        Plaintiff Hall brings a claim for violation of the Bane Act against Defendant Gale and

13  Defendant City of Weed.  (ECF No. 13.)  The Bane Act, California Civil Code § 52.1, provides a

14  private cause of action against anyone who "interferes by threats, intimidation, or coercion, or

15  attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an

16  individual or individuals of rights secured by the Constitution or laws of the United States, or

17  laws and rights secured by the Constitution or laws of California."  Cal. Civil Code § 52.1(a).

18  However, "[e]vidence simply showing that an officer's conduct amounts to a constitutional

19  violation under an 'objectively reasonable' standard is insufficient to satisfy the additional intent

20  requirement under the Bane Act."  *Losee v. City of Chico*, 738 F. App'x 398, 401 (9th Cir. 2018)

21  (citing *Reese*, 888 F.3d at 1045).  "Rather, [the plaintiff] must show that [the officer] 'intended

22  not only the force, but its unreasonableness, its character as more than necessary under the

23  circumstances.'"  *Id*.  (quoting *Reese*, 888 F.3d at 1045).

24        The specific intent inquiry for a Bane Act claim is focused on two questions: first, "'[i]s

25  the right at issue clearly delineated and plainly applicable under the circumstances of the case,'

26  and second, '[d]id the defendant commit the act in question with the particular purpose of

27  depriving the citizen victim of his enjoyment of the interests protected by that right?' So long as

28  those two requirements are met, specific intent can be shown 'even if the defendant did not in fact

13

1  recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the

2  constitutional right."  *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (internal

3  citations omitted) (quoting *Cornell v. City & Cnty. of S. F.*, 17 Cal. App. 5th 766, 801–02 (2017)

4  (showing reckless disregard for the right at issue is a question of fact for a jury to determine)).

5    For the reasons already discussed, there are genuine issues of material fact as to whether

6  Defendant Gale used excessive force against Plaintiff Hall in violation of his Fourth Amendment

7  rights.  *See Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013) ("[T]he elements of the

8  excessive force claim under § 52.1 are the same as under § 1983.").  As to the specific intent

9  inquiry, the Court finds that triable issues of material fact exist as to whether Officer Gale acted

10  with specific intent or reckless disregard of Plaintiff Hall's Fourth Amendment rights.

11    Accordingly, Defendants' motion for summary judgment as to Plaintiff Hall's Bane Act

12  claim is DENIED.

13          *ii.*   *Negligence, Assault, Battery*

14    Plaintiff Hall brings claims for negligence, assault and battery against Defendant Gale and

15  Defendant City of Weed.  (ECF No. 13.)  The Ninth Circuit reads the reasonableness inquiry

16  required for Fourth Amendment excessive force claims into state law battery and negligence

17  claims.  *Uzun v. City of Santa Monica*, 54 F.4th 595, 596 (9th Cir. 2022); *Hayes v. Cnty. of San*

18  *Diego*, 736 F.3d 1223, 1232 (9th Cir. 2013); *see also Brown v. Ransweiler*, 171 Cal. App 4th 516,

19  527 n.11 (2009) ("Because federal civil rights claims of excessive use of force are the federal

20  counterpart to state battery and wrongful death claims, federal cases are instructive in this area.").

21  Given the foregoing analysis in part (A)(1), the Court finds that there are genuine issues of

22  material fact as to the reasonableness of Defendant Gale's use of force that a jury must decide.

23  Summary judgment on Plaintiff Hall's state law claims of battery, assault and negligence is

24  inappropriate at this time.

25    Accordingly, Defendant Gale's motion for summary judgment as to Plaintiff Hall's state

26  law battery and assault claims is DENIED and Defendant City's motion for summary judgment as

27  to Plaintiff Hall's negligence claim is DENIED.

28  ///

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Defendant City's Motion for Summary Judgment (ECF No. 38) in its entirety. For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant Gale's Motion for Summary Judgment (ECF No. 40) as follows:

1.  The Court DENIES summary judgment as to Plaintiff Hall's claim for excessive force in violation of the Fourth Amendment and GRANTS summary judgment as to Plaintiff's claim for excessive force in violation of the Fourteenth Amendment (Claim One);

2.  The Court GRANTS summary judgment as to Plaintiff Hall's claims under the Eighth and Fourteenth Amendments (Claims Two and Three);

3.  The Court DENIES summary judgment as to Plaintiff Hall's claim for violation of the Bane Act (Claim Four);

4.  The Court DENIES summary judgment as to Plaintiff Hall's claim for assault (Claim Six);

5.  The Court DENIES summary judgment as to Plaintiff Hall's claim for battery (Claim Seven).

The parties are ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

Date: November 14, 2024

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

15